## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ERRORS

### OF THE

# STATE OF CONNECTICUT.

---

THE CITIZENS' WATER COMPANY OF BRIDGEPORT *vs.*
THE BRIDGEPORT HYDRAULIC COMPANY.

Fairfield Co., Oct. T., 1886.  PARK C. J., CARPENTER, PARDEE, LOOMIS
and GRANGER, Js.

In 1853 the common council of the city of Bridgeport accepted a proposi-
tion made by one *G* to supply the city with water, and granted him
(with a right of assignment) the exclusive right to lay pipes in the
streets so long as a full supply of pure water should be furnished.  In
1857 the Bridgeport Hydraulic Company was incorporated with pow-
er to acquire, and which did acquire, all the rights of *G* under the
vote of the city and became charged with all his duties : and this com-
pany soon after expended a large sum of money in acquiring property
and establishing its water works.  Held that, so long as this company
supplied the city with an abundance of pure water, the legislature had
no power to give another corporation the right to lay its pipes in the
streets of the city for the purpose of supplying the city with water.

Although the state may be no party to, and have no interest in, the subject
matter of a contract, yet if it invests a corporation, otherwise pow-
erless, with power to make it, the legislature is thereafter concluded in
reference to it.  It is, as a lawful contract, sacred from any interfer-
ence other than judicial construction.

It is the duty of courts to preserve contracts inviolate rather than to des-
troy monopolies.

If the common council had no power to grant the exclusive use of the
streets, yet as the charter of·the defendant company recognized and

confirmed the grant by the city, it became as effective as if the city had had the power to make it, and as if the legislature had made it in the most direct and explicit words.

By a clause in the charter of the defendant company the legislature reserved the power to recall the franchise at its pleasure. Held that this provision did not authorize the legislature to set aside or impair the contract which the city had entered into for the exclusive use of its streets by the defendant company so long as it should supply the city with water, and which the charter had recognized and confirmed.

[Argued December 9th, 1886—decided February 25th, 1887].

A PROCEEDING for the condemnation to the use of the plaintiff company of certain property and water rights belonging to the defendant company, taken before Judge *Sanford* of the Superior Court. The defendant filed an answer to which the plaintiff demurred. The demurrer was sustained *pro forma* by the judge and the answer held insufficient. The plaintiff appealed to this court. The case is fully stated in the opinion.

*C. R. Ingersoll*, with whom were *G. Stoddard* and *C. Sherwood*, for the appellant.

1. Upon the incorporation of the Bridgeport Water Company a contract arose between the new corporation on the one side, and the city of Bridgeport and the state of Connecticut on the other, by which a right to the exclusive use of the streets of the city for a public water supply became vested in that corporation. And the constitution of the United States (Art. 1, Sec. 10), protects the obligation of this contract from any impairment by the legislation of the state. The answer of the defendant should, for this reason, have been held sufficient. This proposition involves a federal question. The decisions of the United States Supreme Court upon all questions arising upon the construction of the constitution must control the state courts. *Trustees of Bishop's Fund* v. *Rider*, 13 Conn., 93. It is well settled by the decisions of that court that a grant of a franchise may constitute an irrevocable contract, the obligation of which cannot be destroyed or impaired by any legislative action thereafter. *Dartmouth College Case*, 4 Wheat., 518; *New*

*Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. R., 650 ; *New Orleans Water Works* v. *Rivers*, id., 674 ; *Louisville Gas Co.* v. *Citizens Gas Co.*, id., 683. See also *Enfield Toll Bridge Co.* v. *Hartford & N. Haven R. R. Co.*, 17 Conn., 58 ; *Cone* v. *City of Hartford*, 28 id., 363 ; *Elliot* v. *Fair Haven & Westville R. R. Co.*, 32 id., 579 ; *Olmstead* v. *Camp*, 33 id., 532 ; *Harding* v. *Stamford Water Co.*, 41 id., 91 ; *State* v. *Milwaukee Gas Light Co.*, 29 Wisc., 454 ; *Atlantic City Water Works Co.* v. *Atlantic City*, 39 N. Jer. Eq., 367 ; *Pierce* v. *Drew*, 136 Mass., 81 ; Mills on Eminent Domain, § 55 ; Angell on Highways, § 91 ; 2 Morawetz Private Corp., §§ 1057, 1129. The power of the legislature may be exercised as irrevocably by approving a contract already made by a corporation without authority as by authorizing the corporation to make such a contract. 2 Dillon Mun. Corp., § 79 ; *Davidson* v. *Bridgeport*, 8 Conn., 472 ; *Bridgeport* v. *Housatonic R. R. Co.*, 15 id., 475 ; *Saugatuck Bridge Co.* v. *Westport*, 39 id., 337. The rights under any such contract are vested rights and upon general principles of legislation cannot be disturbed. 2 Morawetz Private Corp., §§ 1101, 1102. And it does not affect the case that the legislature granting the charter giving the rights, or authorizing the contract giving them, contains a reservation of power on the part of the legislature to alter or repeal the charter at its pleasure. *Von Hoffman* v. *Quincy*, 4 Wall., 535 ; *Holyoke Co.* v. *Lyman*, 15 id., 500 ; *New Jersey* v. *Yard*, 95 U. S. R., 104 ; *Railroad Co.* v. *Maine*, 96 id., 499, 508 ; *University* v. *The People*, 99 id., 309 ; *Sinking Fund Cases*, id., 721, 731 ; *Nelson* v. *St. Martin's Parish*, 111 id., 716 ; *Virginia Coupon Cases*, 114 id., 269 ; *Fisk* v. *Jefferson Police Jury*, 116 id., 131 ; *Com.* v. *Essex Company*, 13 Gray, 239 ; *Commissioners* v. *Holyoke Water Power Co.*, 104 Mass., 446.

2. With stronger reason the constitutional inhibition applies in favor of the Bridgeport Hydraulic Company, the present defendant. This company by the express terms of its charter possesses all the rights that were given to the Bridgeport Water Company ; but it has certain rights beyond those of that company. It is found that the corporators were the

holders of bonds of the Bridgeport Water Company. These bonds were authorized by the charter of that company and made a charge upon its property. The obligation of a creditor's contract with his debtor is impaired by any legislation impairing the remedy which the creditor enjoyed at the time of the creation of the debt. *Planters' Bank* v. *Sharp*, 6 How., 327; 2 Morawetz Priv. Corp., § 1102. Besides this the charter of the company again specially recognizes the contract between the city and Green.

3. The record shows that the estate sought to be condemned by the plaintiff is already held for the same public use for which its condemnation is asked. The taking sought, therefore, is not a taking for public use within the constitutions of this state and the United States, and the answer should, for this reason, have been held sufficient. It is not a case where one public use is made to yield to a different and more urgent public use, but the new use is the same as the old, and it becomes a mere attempt to change the ownership of the property, which the legislature has no power to do. *N. York, Hous. & Northern R. R. Co.*, v. *Bost., Hartford & Erie R. R. Co.*, 36 Conn., 196; *Bridgeport* v. *N. York & N. Haven R. R. Co.*, id., 255; *Harding* v. *Stamford Water Co.*, 41 id., 91; *Evergreen Cemetery* v. *City of New Haven*, 43 id., 234; *Central City Horse R'y Co.* v. *Ft. Clark Horse R'y Co.*, 81 Ill., 523; *Lake Shore &c. R. R. Co.* v. *Chicago &c. R. R. Co.*, 97 id., 506; *West River Bridge Co.* v. *Dix*, 6 How., 507, 520, 537, 547.

*J. S. Beach* and *D. F. Hollister*, for the appellee.

The issues raised upon the pleadings are few and simple. The plaintiff was incorporated in 1886 "for the purpose of supplying pure water for public, domestic and manufacturing purposes to the town and city of Bridgeport, and the borough of West Stratford and town of Fairfield." It entered upon the discharge of its corporate obligations, and to that end has made large expenditures, exceeding three hundred thousand dollars, in permanent structures. It now encounters an obstacle which, if it cannot be removed, threat-

ens to be fatal to the enterprise. The obstacle is this :—
There are certain lands in the town of Fairfield of such tri-
fling intrinsic value that for years no one has claimed to own
them, but which the plaintiff needs for its reservoir. It
finds that the title to the land, though miles away from the
defendant's works, now stands in the name of the Bridge-
port Hydraulic Company, which recently became its pur-
chaser with full knowledge of the plaintiff's then pending pe-
tition for its charter. This application is made by the plain-
tiff to condemn these lands under the delegated authority
of the state of its right of eminent domain. The defendant
pleads that the state had no power, as against it, to delegate
this authority to the plaintiff. This is our issue.

The defendant in support of its side of the issue says that
in 1853 one Nathaniel Green made a proposition to the city
of Bridgeport to supply that city with water, upon certain
terms and conditions therein set forth, under one of which
terms and conditions Green was to have the exclusive right
to lay down water pipes in the city of Bridgeport and that
the city by a vote of its common council accepted that prop-
osition. The plaintiff by its demurrer admits these allega-
tions, but avers "*in limine*" in support of its demurrer that
this action of the city in attempting to confer this exclusive
right upon Green was *ultra vires*, and that no valid contract
was thereby created.

This law is too well settled to be denied by the defend-
ant. *Minturn* v. *Larue*, 23 How., 435; *Norwich Gas Light
Co.* v. *Norwich City Gas Co.*, 25 Conn., 19. But, by way of
confession and avoidance, the defendant says—true it is that
this attempted contract between Green and the city was
*ultra vires* and never existed under Green's proposition and
the city's acceptance, but when the defendant was incor-
porated in 1857 a reference was made to the proposition
of Green to be found in the following section of its charter:
—"SEC. 17. If said company shall fail to comply with,
and in all respects to perform, the terms, conditions, stipu-
lations and provisions contained in the proposition of Na-
thaniel Green, relative to supplying said city with water, on

file in the office of the city clerk of said city, reference thereunto being had, then all the rights, powers and privileges conferred by this act shall cease and determine." This is the only reference made in its charter to the Green proposition, but the defendant claims that by virtue of this section validity was (in 1857) imparted to the void action (in 1853) of the common council of the city. The plaintiff on the other hand insists that under the plain, true construction of this section, it was not an expansion of the defendant's immunities under its charter, but was a limitation and restriction, prescribing conditions for failure to comply with which the rights, powers and privileges conferred by its preceding sections should cease and determine.

"The rule of construction in this class of cases is that it shall be most strongly against the corporation. Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded but what is given in unmistakable terms, or by an implication equally clear. Silence is negation; and doubt is fatal to the claim. This doctrine is vital to the public welfare. It is axiomatic in the jurisdiction of this court." *Fertilizing Co.* v. *Hyde Park*, 97 U. S. R., 666.

"A grant of an exclusive privilege or monopoly can in no case be implied." 1 Morawetz Private Corp., § 431.

The plaintiff submits with confidence that its construction of this section is. the right one, and that, so far from its being a grant of an exclusive immunity, it makes those already granted conditional; but even if wrong in this, the plaintiff insists that whatever may be the immunities and privileges granted by the defendant's charter, the duration of each and all of them is by the express terms of its charter made subject to the future action of the General Assembly. Section sixteen of the defendant's charter provides that "this act shall be subject to be altered, amended or repealed at the pleasure of the General Assembly." If the charter of the defendant company had contained *in totidem verbis* the conditions, stipulations and provisions of the Green proposition as a constituent of its chartered privileges and immunities, it must be conceded that the legisla-

ture could lawfully exercise its reserved power to alter and amend or take away any of these privileges and immunities. "The reservation affects the entire relation between the state and the corporation, and places under legislative control all the rights, privileges and immunities derived by its charter directly from the state." *Tomlinson* v. *Jessup*, 15 Wall., 458. "Where such a provision is incorporated in the charter it is clear that it qualifies the grant, and that the subsequent exercise of that reserved power cannot be regarded as an act within the prohibition of the constitution." *Miller* v. *The State*, 15 Wall., 495; *Pennsylvania College Cases*, 13 Wall., 213. Such a reservation formed part of the charter of a gas company which was granted in 1867, and which in terms conferred upon the company the exclusive right of supplying the city of Louisville with gas, but the court say—"The right of the legislature by a subsequent act passed in 1872 to incorporate another gas company to manufacture and distribute gas in Louisville, * * * so far from impairing the defendant's contract with the state, was authorized by its reserved power of amendment and repeal." *Louisville Gas Co.* v. *Citizen's Gas Co.*, 115 U. S. R., 696. This is the law of the land as announced by the Supreme Court of the United States. In *Trustees of Bishop's Fund* v. *Rider*, 13 Conn., 93, the Supreme Court of Connecticut says:—"This court has adopted and firmly upheld the sound doctrine that the decisions of the Supreme Court of the United States upon all questions arising upon the construction and powers of the constitution, must control the state courts and be absolutely binding on all tribunals of the Union."

But it is suggested that the rights and privileges claimed by the defendants under the Green proposition are not incorporated in the defendant's charter, but the Green proposition is simply referred to as being " on file in the office of the city clerk of Bridgeport," and that the Green proposition thereby acquired a potency it would not have had if incorporated in the charter, and that this added potency of reference makes the state impotent to do what it could law-

fully have done if the conditions and stipulations of the Green proposition had been embodied in the charter itself. It is not easy to see wherein the force of this suggestion resides. No reasons are given in aid of its pertinency, and none occur to us. Another suggestion is that, although it be true that the sixteenth section reserves the right of amendment of " this act," yet such power of reservation is restricted to that part of the act which precedes the sixteenth section, and therefore cannot be held to touch the seventeenth section. This suggestion may also be passed upon its mere statement. For, while all agree that the defendant's charter is a contract between itself and the state, the law exacts equal unanimity of assent to the proposition that every contract is to be construed as an entirety, so that if this reservation clause had been recited in the first section of the act, it would mean no more and no less than if it had been the last in the order of position. The judicial mind will interpret this article of the contract by its phraseology, and not by its location.

We therefore submit :—

1st. That by the chartered contract entered into between the state of Connecticut and the Bridgeport Hydraulic Company in 1857, the state did not therein agree that the Hydraulic Company should have the exclusive right to supply the citizens of Bridgeport with water.

2d. That if any clause in that chartered contract could be construed as conferring such exclusive right, such clause was made subject to alteration, amendment and repeal at the pleasure of the General Assembly, and that to the extent that the General Assembly manifested that pleasure in its grant to the Citizens' Water Company, the charter of that company is a valid charter, and does not impair the obligation of any contract between the state of Connecticut and the Hydraulic Company.

3d. That the state of Connecticut had not, prior to 1886, exhausted its power of eminent domain over the lands and real estate in controversy, but so far retained and then held such powers as that it could and did lawfully delegate

the same to the Citizens' Water Company, to enable that company to carry out and effectuate the purpose for which it was incorporated.

PARDEE, J. This is a proceeding for the condemnation of rights in land and water by virtue of eminent domain.

The plaintiff is a corporation chartered in 1886 by the legislature of this state, with the right to supply water to the city of Bridgeport, borough of West Stratford, and town of Fairfield, with power to take all property and rights in property necessary therefor by power of eminent domain.

The defendant is a corporation chartered in 1857 by the legislature of this state, for the purpose of supplying water to the city of Bridgeport and its vicinity, with like power. It procured these rights, completed its works, and during many years last past it has supplied and now supplies that city with water.

The plaintiff has instituted these proceedings for the purpose of condemning to its own use certain land and water rights now owned by the defendant, and proposes to lay pipes in the streets of the city for the distribution and sale of water.

The defendant denies the right of the plaintiff to take any of its land or water rights, or to use the streets of the city for such purpose.

In its answer the defendant says, in effect, that on May 5th, 1853, one Nathaniel Green made a written proposition to the city of Bridgeport concerning the supply of water to it, of which proposition the following sentence was a part: " The city shall give me and such persons as I may associate with me, or any company to be hereafter incorporated or they may assign to, the sole and exclusive right, subject to the legal rights of any person or persons or corporations now existing, of laying down pipes in the streets, highways and avenues of said city, for supplying the city and inhabitants with water, so long as a full and pure supply is furnished."

The answer proceeds to say that " thereupon said city,

by its common council, accepted said proposition, and gave to said Green and his assigns the sole and exclusive right and privilege of laying down pipes for the introduction and distribution of water in said city, by the following resolution :—

" ' *Resolved*, That the sole and exclusive right and privilege of laying down pipes in the public streets, avenues and highways of the city of Bridgeport, for the purpose of introducing and distributing water in said city, subject however to the right of any other person, persons or corporations now existing, be and is hereby granted to Nathaniel Green, and such other individuals as he may associate with him for that purpose, or to any company to which he or they may assign the rights and privileges hereby conferred, and which may hereafter be incorporated on application to the legislature of this state. *Provided* nevertheless, and this resolution is on condition, that said Nathaniel Green, his associates, or said incorporated company, shall supply said city and the inhabitants thereof with a full and ample supply of pure water for all public, mechanical and domestic, and all other ordinary uses and purposes, and in all respects comply with the proposition made by him and hereto annexed and made part of this resolution ; and if the said Green, his associates or said corporation shall fail to supply said city and its inhabitants with a full supply of pure water for the purposes aforesaid, or shall fail to fulfill and perform all the stipulations, agreements and specifications in said proposition, then all the rights, privileges and powers hereby conferred shall cease and determine.'

" Shortly thereafter, and in the year 1853, the Bridgeport Water Company was incorporated by the legislature of this state, and reference to the charter of said Water Company, as appears upon page 1356, vol. 4, of the Private Laws of this state, is hereby made. Said Bridgeport Water Company acquired all the rights, powers, privileges and immunities which said Nathaniel Green or his associates had possessed or acquired, including the right to the sole and exclusive use of the public streets, etc., of the city of Bridgeport, for

the purpose of laying pipes therein to conduct water into and about said city. Said charter was granted and accepted upon the faith of the proposition of said Nathaniel Green, and said resolution of said common council, hereinbefore referred to.

" In the year 1857 this defendant was incorporated by an act of the legislature of this state, reference to which act, as appears upon page 135, vol. 5, of the Private Laws of this state, is hereby made, and this defendant thereupon acquired and became possessed of, and entered upon the enjoyment and use of, all the rights, property, powers, privileges and immunities which had belonged or appertained to said Bridgeport Water Company or said Nathaniel Green or his associates. Said charter was granted and accepted upon the faith of the proposition of said Nathaniel Green and said resolution of said common council.

" This defendant, relying upon the powers and privileges granted to it by its said charter, has expended and invested large sums of money, amounting to more than five hundred thousand dollars, in permanent improvements, for the purpose of carrying out the object of its incorporation, and has acquired and now holds the property mentioned in this application, to be used in connection with its other property and rights, for the furtherance of said purpose and object, and particularly as a reservoir and water supply. And therefore, the defendant says, the act of the General Assembly incorporating the plaintiff impairs the obligation of the contract contained in the charter of the defendant, and is in violation of the constitution of the United States and void.

" This defendant denies that the plaintiff, under its act of incorporation, has any right or power to take for its purposes the estate of this defendant, described in said application, or to appropriate to itself the water of said Mill River or its tributaries, now belonging to this defendant, or to take, or impair in any way, any of the franchises that belong to this defendant by its charter."

The question presented is—Could the legislature of 1886

give the plaintiff the right to lay pipes in the streets of the city of Bridgeport for the distribution and sale of water?

It is the claim of the defendant that, if it should concede that the grant by the common council of the exclusive use of the streets was not of itself effective, because of want of power to make it, nevertheless, it has such exclusive use, for the reason that, in the cited extracts from its charter, the legislature has, both in intention and expression, recognized and confirmed the grant by the city, and made it as effective as if the city had the power to make it, and as if the legislature had made it in the most direct and explicit words. We think the claim of the defendant is well founded.

The sixteenth section of the charter of the Bridgeport Water Company provides that "this act shall be subject to be altered, amended or repealed at the pleasure of the General Assembly." The seventeenth section is as follows:— "If said company shall fail to comply with and in all respects to perform the terms, conditions, stipulations and provisions contained in the proposition of said Nathaniel Green relative to supplying said city with water, on file in the office of the city clerk of said city, reference thereto being had, then all the rights, powers and privileges conferred by this act shall cease and determine." The sixteenth and seventeenth sections of the defendant's charter are respectively in the same words.

The eighth section authorizes the defendant to lay pipes in any street in said city or vicinity, "under the direction and by the consent and agreement of the mayor, aldermen and common council of the city and selectmen of the town of Bridgeport."

The seventeenth section is in effect this:—There is a written proposition from Nathaniel Green to the common council of the city of Bridgeport, now on file in the office of the city clerk, in which he offers to supply water if the city will give him the exclusive use of the streets. The city has in form granted such use upon the terms expressed by a vote of the common council; the legislature has knowl-

edge of the proposition, and makes it a part of this section by a reference thereto. It has knowledge of the attempted grant by the city of the exclusive use of the streets ; the legislature recognizes and confirms that grant by saying to the corporation that if it does not perform every promise by which Nathaniel Green obtained it from the city, its exclusive right to bring water into the city shall terminate ; and if, and so long as, it does perform, that right shall continue. In and by the proposition of Nathaniel Green, the obligation to supply water and the compensating right to the use of the streets are made inter-dependent and inseparable. The common council did not undertake to separate them ; its proviso makes express reference to the proposition ; of course to all of its terms. The seventeenth section of the charter is in meaning wholly, in words partly, a re-statement of the proviso, and is legislative reference to and recognition of the vote, and of the proposition and all of its terms. It is not to be imputed to the legislature that it intended to impose upon it all the burdens of the proposition and withhold every advantage. If the charter had granted in so many words the exclusive use of the streets of Bridgeport, there must have followed all the limitations contained in his proposition, and in the proviso of the city, word for word ; but the same effect was produced by a shorter process—by a reference to the documents.

By the sixteenth section the legislature reserved to itself absolute power to recall the franchise at any time, and for no other reason than that it pleased so to do. No words can add to the force of these ; they exhaust the subject. For what purpose and with what meaning did it add the seventeenth section ? The plaintiff's brief argues that " this section simply said that the company should perform some public service for the rights conferred, as is always required in every charter." But this explanation does not meet the case. The legislature had already taken the highest security from the grantee, namely. power over its life, that it should perform its duty. Moreover, it was a matter of no concern to the state whether the grantee should

exercise the franchise given to it or not. The state had neither desire nor power to compel it to build water works; it only granted the privilege of doing so if the grantee saw fit to exercise it; if the franchise should be used, the state would be satisfied; if it should not be used, it would lapse for non-user, and the state would be equally well satisfied. Up to the seventeenth section the grant was of a privilege, and nothing more, as is usual in such charters—to be accepted or rejected, at the pleasure of the grantee. It is true that the charter does not use the words: " This is a grant of the exclusive right to use the streets of the city of Bridgeport for the sale of water." But the intention to confirm the attempted grant by the city of such power may be found in other words in another connection. If, for instance, the legislature had been dealing with petitioners for the exclusive right to construct a railroad across the state, we might expect to find such exclusive right, if granted, very distinctly expressed; the legislature would be dealing with the subject in the first instance, and under a sense of responsibility for the imposition of a monopoly upon an unwilling state. In the case at bar the matter concerned a single city; that city, to the knowledge of the legislature, had expressed its desire to come under this monopoly; had invited it to the possession of its streets; in form, had come under an absolute obligation to surrender such possession upon a consideration satisfactory to itself. Under such circumstances the legislature was not called to such precision of expression as would be appropriate if the exact measure of the grant had not elsewhere been expressed by all parties affected by it, as would be appropriate if it was granting, and not merely confirming. There was no reason why the legislature should be more careful for the interest of the city than the city had been for itself; no reason why it should withhold in behalf of the city that which it desired to sell. And legislative consent that the corporation should have that degree of monopoly which the community to be affected by it desired that it should have, may be found in words other than those of the most absolute certainty. Hav-

ing retained the power of life over the corporation, the subsequent requirement that its franchise should revert to the state if it did not keep every promise embodied in the written proposition referred to, can have no other reason for being, either in legislative or judicial understanding, than for the purpose of declaring its counterpart, namely, that if, and as long as, it does keep them, the franchise shall not be recalled. Upon the pleadings we are to assume that the promises have been kept. And in the proposition, the right of the city to have pure water stands upon no other or higher ground than its obligation to permit an exclusive use of its streets. Indeed, inasmuch as Nathaniel Green had power to bind himself to furnish water for a specified consideration, if the city had possessed power to bind itself in the manner proposed, there would have been no reason for the interference of the legislature in the matter; the contract between an individual and the city would of necessity have been left to the parties, or to judicial arbitrament if they had disagreed. In the want of power upon the part of the city to give to Nathaniel Green a binding obligation to do what it desired to do, is found the only reason for the existence of the seventeenth section: to give the needed legislative sanction to the city's desire to grant, and to its act of granting, the exclusive use of the streets in return for the supply of water. The legislature having in effect authorized the city to make a contract which it desired to make, will not, cannot, now relieve it. Although the state is no party to, and has no interest whatever in, the subject matter of a contract, if it volunteers to invest a creature of its own, otherwise powerless, with power to make it, the legislature is thereafter concluded in reference to it; it is, as a lawful contract between two natural persons of full legal capacity, sacred from any interference other than judicial construction. And to this extent the seventeenth is a limitation upon the sixteenth section. The plaintiff's charter is legislative permission to destroy a lawful contract between the city of Bridgeport and the defendant. Such permission is of no force.

The plaintiff has pressed upon us the consideration that a decision of this case in behalf of the defendant is the protection of a monopoly, and that a monopoly is odious. But this argument forgets the fact that it is the judicial duty to preserve contracts inviolate, rather than destroy monopolies. Communities may endure monopolies, but they cannot endure the violation of contracts. And it is to be borne in mind that the proposition of Nathaniel Green required him to supply the future city of Bridgeport with an ample supply of water as cheaply as the same should be supplied by any private corporation in any city; and as there may be in some city competition between private corporations in this business, the monopoly has this extent, namely, the city of Bridgeport, without competition, is to have water as cheaply as any other city is able to get it under competition. Moreover, as we have seen, before the business had been subjected to the test of trial, and when its possibilities were unrevealed, the city desired to have Nathaniel Green take the burden of doubt, and promised to assume the burden of monopoly. And at the end of five years of actual trial there remained to it space for repentance for having granted the exclusive use of its streets and an opportunity to rid itself of the burden; it omitted to avail itself of the right, presumably because the monopoly was more burdensome to the possessor than to the public. This omission may well be a source of regret, but it is not a legal reason for annulling a contract.

There is error in the judgment complained of.

In this opinion the other judges concurred, except CAR-PENTER, J., who dissented.