BENJAMIN C. SAMMONS ET AL., APPELLANTS, V. KEARNEY POWER & IRRIGATION COMPANY ET AL., APPELLEES.

FILED NOVEMBER 22, 1906. No. 14,489.

1. **Mortgages: SUBSEQUENT CONVEYANCES.** While the general rule is that a subsequent purchaser or lessee of mortgaged property taking under a conveyance or lease from the mortgagor takes subject to the mortgage, yet, where the mortgage in express terms or by clear implication authorizes the mortgagor to make such sales or leases for the benefit of the mortgagee, a sale or lease made in pursuance of such authority is binding on the mortgagee and those claiming under him.

2. **Quasi Public Corporations: DISCRIMINATION.** A corporation formed for the purpose of supplying water or water power is a *quasi* public corporation, and as such is bound to serve the public without unjust discrimination.

3. ——: CONTRACTS: VALIDITY. A clause of a contract of a corporation of that character which, if enforced, would prevent its serving the public on such terms is illegal and void.

4. **Mortgages: FORECLOSURE: LEASE: VALIDITY.** In a suit for the foreclosure of such mortgage, and where the lessee is a party asserting the priority of his lease, the extent to which such lease is valid and enforceable is a legitimate subject of inquiry and adjudication.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*E. C. Calkins,* for appellants.

*John L. Webster, B. R. Dysart, John N. Dryden* and *H. M. Sinclair, contra.*

ALBERT, C.

The Kearney Power & Irrigation Company is a corporation organized under the laws of this state. The general nature of the business of the corporation is thus stated in its articles of incorporation: "The owning, constructing and operating canals, reservoirs, dams, and other works for irrigation and water power purposes, including the power to lease its own property, and to acquire by purchase such canals, reservoirs, and other works for irrigation and water power purposes and the application of such power to all purposes, including the power to execute mortgages or deeds of trust to secure such bond or bonds as may or shall be issued by the said company in furtherance of the objects of its incorporation." On the 15th day of July, 1898, it executed and delivered to the Mercantile Trust Company of New York, as trustee, a mortgage on a ditch or canal near the city of Kearney, including the right of way and other property and rights, to secure a bond issue of $150,000 in bonds of $500 each. Of these bonds only 274 were disposed of, the remaining 26 require no further mention. On the 1st day of November, 1889, the mortgagor entered into a contract in writing with the Northwestern Electric Heat & Power Company, a corporation, whereby for a consideration therein named the latter was given the right to take water from the canal in question for the period of 15 years, with the privilege of a renewal of the contract on the same terms for an additional 15 years, at its option, for the purpose of furnishing power for its electrical machinery. Default was made in the payment of the interest on the bonds, and on the 9th day of September, 1903, Sammons brought this suit to foreclose a mortgage, alleging that he was the holder of 239 of the bonds. The defendants all defaulted. Sarah Miller, claiming to be the owner and holder of some of the bonds, was permitted to intervene and joined in the prayer of the plaintiff for a foreclosure of the mortgage. The Northwestern Electric Heat & Power Com-

pany was permitted to intervene and set up its rights under its contract with the Kearney Power & Irrigation Company, the mortgagor. The court found in favor of the plaintiff and the intervener Sarah Miller in the full amount of the bonds which they respectively claimed to own, with the accrued interest thereon, and ordered a sale of the property for the satisfaction of the full amount of outstanding bonds and interest, but provided in the decree that such sale should be subject to the rights of the intervener, the Northwestern Electric Heat & Power Company, under its contract with the mortgagor, and that such contract should be binding upon the purchaser at such sale. Both the plaintiff and the intervening company appeal.

The plaintiff assigns several errors, but they all turn on the single question: Did the court err in providing in the decree that the sale thereunder should be subject to the rights of the intervening company under its contract with the mortgagor? The plaintiff invokes the general rule to the effect that, where a corporation mortgages its property, the mortgagee is not bound by subsequent contracts of the mortgagor with respect thereto, whether such contracts are leases, sales, mortgages, or other contracts. 3 Cook, Corporations (5th ed.), sec. 860; 5 Thompson, Commentaries, Law of Corporations, sec. 6239; Jones, Railroad Securities, secs. 567-569. See also 41 Cent. Dig. "Railroads," sec. 685. The foregoing rule is easily recognizable, as it is grounded on the general rule applicable to all mortgages that an interest subsequently acquired by a third party in the mortgaged property is subject to the mortgage; but the question is whether the facts in this case bring it within that rule. It will be conceded, notwithstanding the positive language in which such rule is stated, that it would be competent for the parties to a mortgage to take it out of the operation thereof by express stipulation. That is to say, that, in case the mortgage should expressly provide that the mortgagor should be authorized to lease the property or portions

thereof, or enter into contracts with respect thereto, and that such leases and contracts, when made, should pass to the mortgagee as further security for the mortgage debt, leases and contracts made by the mortgagor in the exercise of such authority would be valid and binding as against the mortgagee and those claiming under him. It will also be conceded that the same result would follow whether such authority rest on express grant or clear implication. Hence, in order to determine whether the mortgagor had authority under the mortgage to make the contract or lease under which the intervening company claims, an examination of the provision of the mortgage becomes necessary. It is not claimed that such authority is expressly given. It remains to determine whether it is given by implication. The solution of this question is to be found, we think, in the familiar rules of construction applicable to the facts in this case, rather than in precedents resting, as they must, on instruments differing materially from that under consideration.

The granting clause of the mortgage, after describing the canal and right of way, is as follows: "Together with all reservoirs, dams and lakes connected with or forming a part of said canal, including three lakes now known as 'Lake Echo,' 'Lake Greenwood' and 'Lake Kearney'; also all parcels and tracts of land purchased for or used by such company in the construction of head gates or basins or other purposes connected with the said canal; and also the right and franchises of said company to construct, maintain, operate or use said canal, and to lease or sell waters therefrom for irrigation, town, city, power or other purposes, and all erections and buildings, and all machinery of every kind, nature and description, engines, reservoirs, pumps, wells, pipes or other constructions of every kind and description, tools, implements and fixtures of every kind and nature made, manufactured, constructed, built, laid, purchased or in any way acquired in or about the construction, maintenance and operation of said canal, and which may hereafter be made, manufac-

tured, constructed, built, laid, purchased or acquired in or about the construction, maintenance and operation of the said canal, and all the income, rents, profits, emoluments and moneys derived by or from said irrigation company, including all revenues from all sources whatsoever; together with all and singular the tenements and appurtenances thereunto belonging, and the reversions, remainders, tolls, incomes, rents, issues and profits thereof, and also the estate, title and interest of all kinds whatsoever as well at law as in equity of the said mortgagor, the Kearney Power & Irrigation Company, in and to the same and every part thereof; and also all the rights, franchises, easements and rights of way connected with and belonging to the above mentioned irrigation company; and also all things in action, contracts, leases, claims and demands of the said irrigation company, as well as all franchises of every kind or nature, rights, privileges and immunities of the said irrigation company, including all right of way in, through or over streets, avenues, lanes, alleys, lands, public grounds, bridges and other public and private places now owned by said irrigation company or hereafter acquired by said irrigation company, and all property of every kind and nature, real, personal and mixed, now owned or which may hereafter be acquired by the irrigation company. It being intended, however, that the foregoing description of the real estate of the irrigation company is not to exclude any piece or parcels of land whatever not herein especially described, now owned by the irrigation company or hereafter acquired, from passing to the trustee under this indenture." The habendum clause, so far as is material at present, is as follows: "To have and to hold all and singular the said property of every kind of the said irrigation company, together with its appurtenances, franchises, buildings, machinery of all kinds, tools, implements and fixtures of every kind and other appurtenances now owned or possessed or to be hereafter acquired by the said irrigation company, and all other premises, property, rights, interests, franchises,

leases, revenues, tolls, incomes, immunities, privileges and other things aforesaid now owned or hereafter acquired by the said irrigation company to the trustee as aforesaid, and its successors and assigns in trust." The mortgage contains further provisions, among which is this: "Eleventh. The irrigation company, for itself, its successors and assigns, doth hereby covenant and agree to and with the trustee and its successors in trust, and to and with the respective persons, firms and corporations who shall at any time be holders of the bonds hereby secured, that the said irrigation company, its successors and assigns, shall and will at any time, and from time to time hereafter, and at its own proper expense, make, execute and deliver such other and further acts, deeds, conveyances, assignments and assurances in law for the better assurance of the said trustee and its successor or successors in the trust hereby created upon the trust and for the purpose herein expressed or intended, upon all and singular the aforesaid described property, real, personal and mixed, including all rights, privileges and franchises of every kind whatsoever hereby mortgaged or conveyed in trust, or intended to be now owned or vested in the said irrigation company, its successors and assigns, as the said trustee and its successors shall be reasonably advised or required, so as to render not only all the property rights and franchises of every kind and nature herein conveyed, but also as well and especially such portion thereof as shall be hereafter acquired by the irrigation company, available for the security and satisfaction of the said bonds and each, and all of them, according to the intent and purpose of this mortgage or deed of trust expressed."

From the portions of the mortgage just quoted it clearly appears (1) that the mortgage covered all the property of the mortgagor of every character; (2) that the mortgage was intended to cover not only such things in action, contracts, leases, claims and demands as existed when the mortgage was given, but all such as the mortgagor might thereafter acquire; (3) that such things in action, con-

tracts, leases, claims and demands as the mortgagor might
subsequently acquire should be duly assigned to the mort-
gagee as further security for the mortgage debt.   But,
when the construction of a contract becomes necessary, it
is permissible to look beyond the language of a contract
and take into account the nature of the subject matter,
the condition and situation of the parties, and the facts
and circumstances surrounding the transaction.   The
mortgagor was a corporation, and one of the purposes of
its organization was to lease water rights.   It was the
owner of a plant designed to serve that purpose, but
which, as the record shows, yielded no revenue, save such
as might be derived from the sale or leasing of water
rights.   The bonds by their terms were made to run for
a period of 20 years, and the interest thereon is payable
semiannually.   Now, taking into account these facts and
circumstances in connection with those provisions of the
mortgage hereinbefore set out, it is too clear to admit of
argument that the parties to the mortgage at the time it
was made contemplated that the mortgagor's plant cov-
ered by the mortgage should be maintained as a going
concern, because in no other way could it meet the in-
terest on the bonds from time to time, to say nothing of
the discharge of the principal debt when it became due.
But we must also take into account the nature of the uses
for which water or power from the canal could be sold or
leased.   Such uses imply a large preliminary outlay on
the part of those buying or leasing a water right.   No
business man would make such outlay if the only contract
he could make for the use of water were one liable to be
terminated at any time.   Now, while the mortgage debt
was to run 20 years, yet by the terms of the mortgage it
might upon certain conditions be declared due and pay-
able in case of default in the payment of the interest,
which was to be paid semiannually.   Hence, unless the
mortgagor had implied authority to bind the mortgagee
by contracts and leases like that under consideration, no
one entering into a contract or lease for the use of water

or water power would have any assurance that his contract or lease would not be terminated at any time. The parties to the mortgage must have known that no one would care to enter into a contract subject to such hazards. Consequently, it is fair to presume that, when the authority to maintain a going concern was given, it was intended that the authority to do the things reasonably necessary to that end should go with it. A chattel mortgage on a stock of goods, which contained a provision whereby the mortgagor was given possession with power to sell in the usual course of business, the proceeds to go in satisfaction of the mortgage debt, is valid as against creditors if made in good faith. *Davis v. Scott*, 22 Neb. 154; *Lepin v. Coon*, 54 Neb. 664. *A fortiori* it is valid as between the parties, and therefore binding upon the mortgagee and those claiming under him. The principle which makes such provisions binding upon the parties to a chattel mortgage and those claiming under them applies, we think, with equal force to the provisions of the mortgage now under consideration.

The plaintiff presents an argument of considerable force against the construction we have just placed upon the mortgage, which is based on the following state of facts: During the negotiations leading up to the execution of the mortgage, it appears to have been understood that the canal and entire plant covered by the mortgage should be leased to the Kearney Cotton Mills for a term of ten years, with the privilege of an additional term of ten years, for a rental equal to 4 per cent. per annum of the amount of the prospective bond issue actually issued, the rent to be paid semiannually to the holder of the mortgage securing the bonds. A few days prior to the execution of the mortgage the mortgagor executed a lease on those terms to the Kearney Cotton Mills. The lease provided, among other things, that upon the nonpayment of the whole or any portion of the rent when the same should become due and payable, or upon a breach of any of the covenants and agreements of the lease by the lessee,

the lessor (the mortgagor) might, at its election, declare the lease at an end and recover possession of the property by summary proceedings in forcible detainer. The plaintiff argues that this is the only lease the parties to the mortgage had in contemplation when the mortgage was executed, and that such lease being of the entire plant precludes the idea that the mortgagor had implied authority to make leases and contracts with respect to the property with other parties which would be binding upon the mortgagee. But the provisions of the lease show that the parties took into account the contingency that the lessee might fail to pay the rent, or perform some other covenant of the lease on its part to be performed, and provided against it, giving the lessor the right upon the happening of such contingency to declare the lease at an end. Had the lease been the only one in contemplation of the parties at the time the mortgage was given, instead of speaking of leases, and attempting to cover not only such as were then in existence, but all such as should be made in the future, the plaintiff's argument upon this state of facts would be unanswerable. But, taking into account that the lease provided that it might be terminated at any time upon the happening of certain contingencies, and that the mortgage covers not only leases which were in existence when it was made, but all contracts and leases which might thereafter be made, and provides for their assignment to the mortgagee as further security for the mortgage debt, the argument is not convincing. No question of fraud arises. The evidence shows that the contract is fair and reasonable. Therefore, taking into account the provisions of the mortgage, the nature and condition of the subject matter, the situation of the parties at the time the mortgage was given and the attending facts and circumstances, we are satisfied that the mortgagor had authority to bind the mortgagee by the contract in question.

This brings us to the intervener's cross-appeal. Its contract for the use of water contains this clause: "The

party of the first part further agrees not to sell water for power to any person or corporation intending to compete with the party of the second part (intervener) in the generation of electricity for sale." The trial court held the foregoing clause to be contrary to public policy and void, and the intervener contends that the decree to that extent is erroneous. In support of this contention many cases are cited wherein exclusive franchises to operate ferries, construct bridges, or to supply cities with water or gas for a limited time have been upheld. See *New Orleans Gas Co. v. Louisiana Light Co.*, 115 U. S. 650; *New Orleans Water-Works Co. v. Rivers*, 115 U. S. 674; *Louisville Gas Co. v. Citizens Gas. Co.*, 115 U. S. 683; *Citizens Water Co. v. Bridgeport Hydraulic Co.*, 55 Conn. 1; *Des Moines Street R. Co. v. Des Moines Broad Gauge Street R. Co.*, 73 Ia. 513; *Davenport Gas & Electric Co. v. City of Davenport*, 124 Ia. 22; *Bridge Proprietors v. Hoboken Co.*, 1 Wall. (U. S.) 116; *The Binghamton Bridge*, 3 Wall. (U. S.) 51. The distinction between those cases and the case at bar is obvious. A municipal corporation is an instrumentality of the state for the better administration of government in matters of local concern. *United States v. New Orleans*, 98 U. S. 381. The main purpose of its creation is the exercise of certain governmental functions within a defined area. While it has the power to make contracts and transact other business not strictly governmental in character, such powers are incidental or auxiliary to its main purpose. In none of the cases cited was there any attempt on the part of a municipality to restrict its governmental functions, or to place itself in a position where it would be incapable of carrying out the purpose for which it was created. In the case at bar we are dealing with an irrigation company—a *quasi* public corporation. It also is a governmental agency, but its main purpose is the administration of a public utility. To the extent of its capacity it is bound to furnish water from its canal to persons desiring to use it on equal terms and without discrimination,

In this respect it stands on the same footing as a railroad company. Neither has the right or power to place itself in a position where it cannot serve every person on equal terms with every other person. Neither has the right or the power to bind itself by contract which, if enforced, would render it unable to serve the public on those terms or to carry out its main purpose. In *State v. Hartford & N. H. R. Co.*, 29 Conn. 538, where a railroad company had placed itself in such a position, Ellsworth, J., pertinently asks: "What right have they to covenant with that corporation that they will not run cars to tide water, as the charter provides that they shall and as the public accommodation requires?" And with equal force it may be asked in this case: What right had the irrigation company, bound by the very nature of its organization to furnish water to the public without discrimination, to bind itself by the clause in question which would prevent it performing such services? In *Chicago Gas Light & Coke Co. v. People's Gas Light & Coke Co.*, 121 Ill. 530, 2 Am. St. Rep. 124, one of the propositions of law laid down is that a corporation owing a duty to the public cannot make a valid contract not to discharge such duty. From this proposition it would necessarily follow that, where a corporation owes a duty to the public generally, it cannot bind itself by contract to serve one person to the exclusion of all others. In *West Virginia T. Co. v. Ohio River P. L. Co.*, 22 W. Va. 600, 46 Am. Rep. 527, a landowner had granted to an oil transportation company the exclusive right of way and privilege of laying and maintaining pipes for transporting oil through a tract of 2,000 acres, and the contract was held invalid, as an unreasonable restraint of trade and contrary to public policy. In that case a large number of authorities are reviewed, among which are many wherein contracts in restraint of trade have been upheld, and others again where they have been held void as against public policy. The court there holds that the test is whether the restraint is prejudicial to the public interest, and then uses this language:

"From the principles, which underlie all the cases, the inference must be necessarily drawn, that if there be any sort of business, which from its peculiar character can be restrained to no extent whatever without prejudice to the public interest, then the courts would be compelled to hold void any contract imposing any restraint however *partial* on this peculiar business, provided of course it be shown clearly, that the peculiar business thus attempted to be restrained is of such a character, that any restraint upon it however *partial* must be regarded by the court as prejudicial to the public interest. Are there any sorts of business of this *peculiar* character? It seems to me that there are, and that they have been recognized as possessing this peculiar character both by the statute law and by the decisions of the court. Are not *railroading* and *telegraphing* forms of business, which are now universally recognized as possessing this *peculiar* character?"

The principle involved in the case at bar does not, as it appears to us, differ from that involved in the case from which we have just quoted. The business of the irrigation company is of the peculiar character mentioned by the West Virginia court. In the latter there was an attempt to give one person engaged in transporting oil an exclusive right to occupy certain lands for that purpose, to the exclusion of all others who under the laws of that state had an equal right to use the land, after proper condemnation proceedings, for the same purpose. Here there was an attempt to give the intervener an exclusive right for a term of years to use water which under the law the irrigation company was bound to furnish to the public on equal terms, and the one, no less than the other, is contrary to public policy and illegal.

But the intervener takes the position that the question of the validity of that clause of the contract is not involved in this case and, consequently, that the determination thereof by the trial court is error. This position is clearly untenable. The intervener came into court asserting the priority of its rights under its contract with the

mortgagor.   Such contract or lease is in the nature of a prior incumbrance, and it was eminently proper for the court to ascertain and determine the nature and extent of such incumbrance.   The position of the intervener is analogous to that of a first mortgagee who appears in a case asserting the priority of his lien, but not asking its foreclosure.   In such cases the propriety of finding the amount due on the first mortgage and ordering a sale subject thereto has never been questioned.   Whether the intervener, because of the public service required of it by its contract with the city of Kearney, would be entitled to a preference over those using water for private purposes is a question that does not arise at this time; and, when it does, if it ever does, we apprehend it will turn on questions of public policy rather than the contractual rights of the parties.

Other questions are presented by the cross-appeal; but, in the view we have taken of the case, they are not such as affected the rights of the intervener, consequently they will not be considered.

It is recommended that the decree of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.