McBRIDE, Judge.
This appeal, perfected by the defendant from an adverse judgment, was transferred to this court by the Supreme Court, La. Sup., 52 So.2d 753. The Board of Commissioners of the Port of New Orleans (commonly referred to as the Dock Board) proceeds under authority of the Uniform Declaratory Judgments Act, LSA-RS 13 :- 4231-46, against The Hibernia National Bank in New Orleans, as successor trustee for the bondholders under three certain mortgages of the Board, for a judicial interpretation of certain special provisions in the mortgages which secured bonds issued for funds obtained for the digging and building of the Inner Harbor-Navigation Canal, which connects Lake Pont-ehartrain with the Mississippi River.
Act No. 244 of 1914, adopted as an amendment to the then prevailing Constitution, granted to the Board the power to dig the canal and to pay for same and the necessary works and improvements thereon by issuing mortgages or bonds against the real estate and canal, and locks and other improvements erected- thereon, said mortgages or bonds to be paid out of the net receipts of said canal and its appurtenances after the payment of operating expenses. The Constitution of 1921, art. VI, § 16, continued Act No. 244 of 1914 in force for the purpose of completing the construction and authorizing the maintenance and operation of the Navigation Canal. By Act No. 73 of 1922, the Constitution of 1921 was amended, art. 6, § 16.1, investing the Board with full power to lease for manufacturing and commercial purposes lands acquired for the Navigation Canal.
Pursuant to the authority conferred upon the Board, it executed three separate bond mortgages and pledges of revenues, bearing respectively the dates June 29, 1918, March 29, 1919, and December 8, 1919, all of which were duly inscribed upon the mortgage records.
In each act of mortgage, the Board of Commissioners of the Port of New Orleans irrevocably bound itself to maintain- and operate the canal, and agreed not to sell, lease, or in any manner dispose of the same, or any of the lands necessary therefor, until all bonds issued, with interest thereon, were paid in full. Certain stipulations then appear, designed to protect the bondholders in case the Board should make a sale or disposition of the canal or any of the necessary lands before the bonds had been paid in full. Then follows this proviso: “ * * * the said Board may lease for a term not exceeding twenty-five years (25) any parcel or parcels of land upon the said canal; and with the assent, in writing, o-f the Trustee may lease for a term of years not exceeding ninety-nine years (99) any parcel or parcels of land upon the said canal; * * * ”
*773 The Board contends in these proceedings that any lease it may grant will vest in its lessees rights superior to those of the Hiibernia National Bank in New Orleans, the successor trustee representing the bondholders. On the other hand, the trustee denies that such will 'be the result, maintaining that the mortgages will prime any permissible leases which may be entered ■into by the Board.
The trial judge determined the issue in favor of the Board, and this appeal by the trustees ensued.
The fact that a proprietor has placed a mortgage upon his property does not prohibit him from making a lease of the property, which lease, however, would be subject to the mortgage. But the sale of mortgaged property under judicial process dissolves a lease on the property made and recorded subsequent to the execution and registry of the mortgage. Barelli v. Szymanski, 14 La.Ann. 47; Sandel v. Douglass, 27 La.Ann. 628; Lewis v. Klotz, 39 La.Ann. 259, 1 So. 539; Thompson v. Flathers, 45 La.Ann. 120, 12 So. 245; Deville v. Couvillion, 5 La.App. 519.
The peculiar wording of the mortgages., insofar as the provisions pertaining to leases of lands upon the canal are concerned, makes it manifest that the language was inserted for the purpose of protecting both the lessees and the trustee. Not only does the mortgage bear against the lands acquired and to be acquired, and the canal itself, locks and other appurtenances erected and to be erected thereon, but also, the net receipts of the said canal and appurtenances thereof, after the payment of operating expenses, are specifically pledged for the payment and retirement of the bonds. Under the provisions, the Board may make leases for terms of .between twenty-five and ninety-nine years, only with the assent in writing of the trustee, which, of course, gives the right to the trustee to withhold its assent in the case of leases which it considers disadvantageous.
The constitutional provision restricts the leases to manufacturing and commercial purposes. It is a well known fact that large industries have located along the canal under leases from the Board, and that in the future other leases are anticipated. Undoubtedly, the lessees invest huge amounts in erecting buildings and other improvements .in connection with their various enterprises, and 'it is but logical to assume that the provisions concerning the Board's right to make leases were incorporated in the mortgages to make the rights of the lessees superior to those of the trustee, so as to protect the lessees in their investments. The successful operation of most businesses is based on a long term plan, and if the rights of the lessees were to be declared inferior to those of the trustee, it is self-evident that the power to lease would be ineffectual, as no sane business man would invest his money in an enterprise which might be put out of existence because of a foreclosure of a mortgage.
The precise question under consideration is res nova in this state, but there emanate from other jurisdictions adjudications interpreting similar lease provisions contained in mortgage indentures.
In 59 C.J.S., Mortgages, § 309, p. 404, it is stated: “ * * * It has been held, however, that, where the mortgage in express terms or by necessary implication authorizes the mortgagor to lease the mortgaged property for the benefit of the mortgagee, a lease made in pursuance of such authority is binding on the mortgagee and those claiming under him in the absence of fraud.”
The District Court of Appeal, Fourth District, of the State of California, in Calidino Hotel Co. v. Bank of America National Trust & Savings Ass’n, 31 Cal.App.2d 295, 87 P.2d. 923, 925 (hearing denied by Supreme Court), said:
“The general rule is to the effect that a subsequent lessee of mortgaged property, taking under a lease from the mortgagor, takes subject to the mortgage. * * * Yet, where the mortgage in express terms or by clear implication authorizes the mortgagor to make such a lease for the benefit of the mortgagee, a lease made in pursuance of such authority is binding upon the mortgagee and those claiming under him. *774 Sammons v. Kearney Power & Irrigation Co., 77 Neb. 580, 110 N.W. 308, 8 L.R.A., N.S., 404; 19 R.C.L. 321, sec. 97.
* * ⅜ ⅜ * *
“ * * * The leasing of the property was for the protection of the bondholders, as anticipated in the trust indenture. The parties must have 'contemplated that no one would care to enter into a lease of such premises as a hotel wherein the investment of considerable money would be required and wherein the success of the undertaking depended upon a long term plan of operation and the good will which was in this way created, unless such lessee had had some guarantee from the bondholders that he would not be disturbed provided he performed according to the terms of his lease. * * * ”
A question similar in principle was presented in the case of Sammons v. Kearney Power & Irr. Co., 77 Neb. 580, 110 N.W. 308, 310-311, 8 L.R.A., N.S., 404, and the Supreme Court of Nebraska said:
“ * * * But, when the construction of a contract becomes necessary, it is permissible to look beyond the language of a contract, and take into account the nature of the subject-matter, the condition and situation of the parties, and the facts and circumstances surrounding the transaction. The mortgager was a corporation, and one of the purposes of its organization was to lease water rights. It was the owner of a plant designed to serve that purpose, ¡but which, as the record shows, yielded no revenue save such as might be derived from the sale or leasing of water rights. The bonds by their terms were made to run for a period of 20 years, and the interest thereon is payable semiannually. Now, taking into account these facts and circumstances, in connection with those provisions of the mortgage herein-before set out, it is too clear to admit of argument that the parties to the mortgage at the time it was made contemplated that the mortgagor’s plant covered by the mortgage should be maintained as a going concern, because in no other way could it meet the interest on the bonds from time to time, to say nothing of the discharge of the principal debt when it became due.
“But we must also take into account the nature of the uses for which water or power from the canal could be sold or leased. Such uses imply a large preliminary outlay on the part of those buying or leasing a water right. No business man would make such outlay if the only contract he could make for the use of water were one liable to be terminated at any time. Now, while the mortgage debt was to Tun 20 years, yet by the terms of the mortgage it might upon certain conditions be declared due and payable in case of default in the payment of the interest, which was to be paid semiannually. Hence, unless the mortgagor had implied authority to bind the mortgagee by contracts and leases like that under consideration, no one entering into a contract or lease for the use of water or water power would have any assurance that his contract or lease would not be terminated at any time. The parties to the mortgage must have known that no one would care to enter into a contract subject to such hazards. Consequently it is fair to presume that, when the authority to maintain a going concern was given, it was intended that the authority to do the things reasonably necessary to that end should go with it. A chattel mortgage on a stock of goods, which contained a provision whereby the mortgagor was given possession with power to sell in the usual course of business, the proceeds to go in satisfaction of the mortgage debt, is valid as against creditors if made in good faith. Davis v. Scott, 22 Neb. 154, 34 N.W. 353; Lepin v. Coon, 54 Neb. 664, 74 N.W. 1079. A fortiori it is valid as between the parties, and therefore binding upon the mortgagee and those claiming under him. The principle which makes such provisions binding upon the parties to a chattel mortgage and those claiming under them applies, we think, with equal force to the provisions of the mortgage now under consideration.
⅜ ⅜ ifC ⅜ jjt ⅜
“ * * * The evidence shows that the contract is fair and reasonable. Therefore, taking into account the provisions of the mortgage, the nature and condition of the suibject-matter,. the situation of the parties *775 at the time the mortgage was given, and the attending facts and circumstances, we are satisfied that the mortgagor had authority to bind the mortgagee by the contract in question.”
The gist of the judgment is that leases for a term not exceeding twenty-five years, which are authorized to be made without the assent of the trustee, when properly registered in the conveyance office, will rank superior to the mortgages and pledges of revenues; and that in the case of leases for a term of between twenty-five and ninety-nine years, where assented to -in writing by the trustee, such assent shall have the legal and binding effect of subordinating to such leases the mortgages and pledges of revenues. Our conclusion is that the trial judge was eminently correct in so holding.
Therefore, the judgment is affirmed.
Affirmed.