THE SOUTH CHICAGO CITY RAILWAY COMPANY

*v.*

THE CALUMET ELECTRIC STREET RAILWAY COMPANY.

*Opinion filed February 14, 1898.*

1. CONTRACTS—*enjoining breach of contract is a negative specific performance.* Granting an injunction restraining the breach of a contract is a negative specific performance of the contract.

2. SAME—*breach cannot be enjoined if contract cannot be specifically enforced.* The breach of a contract cannot be enjoined unless the contract is one which equity might specifically enforce between the parties if called upon to do so.

3. PUBLIC POLICY—*contract by street railway which prevents discharge of duty to public is void.* Street railway companies owe to the public the duty of using their respective franchises unrestrained by contract, and any agreement among themselves, or with others, which tends to prevent the discharge of their duties to the public is violative of public right, and void.

4. SAME—*when contract between street railways is not enforceable.* An agreement between rival street railway companies that, in consideration that one will allow the other to use the former's track so as to connect with the latter's track on another street, thus forming a loop, neither will ever cross the tracks of the other at grade without written consent, is, in effect, an agreement not to invade each other's territory, and void as against public policy.

5. SAME—*that railway is not bound to extend its tracks is no warrant for contracting not to do so.* The fact that a street railway company is not legally bound to extend its tracks for public accommodation does not give it the right to contract not to do so.

6. EQUITY—*equity will not enforce contract against public policy.* A court of equity will not specifically enforce, either affirmatively or negatively, a contract which is void, as being against public policy.

*South Chic. City Ry. Co.* v. *Calumet Ry. Co.* 70 Ill. App. 254, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

Appellant sued in chancery, in the circuit court of Cook county, to enjoin appellee from operating its cars over certain crossings of its tracks, and to prevent ap-

pellee from constructing any further or other crossings over its tracks. The circuit court sustained a general demurrer to the bill and dismissed it for want of equity, at the complainant's cost. The Appellate Court having affirmed that order, this appeal is prosecuted.

The parties were street railway corporations organ-- ized under the Railroad Corporation act of this State, operating street railways by electricity, using the over- head trolly system, in the south part of the city of Chi- cago, their lines crossing each other at one or more points. On the first day of December, 1892, they entered into a contract in writing, as follows:

"Whereas, the Calumet Electric Street Railway Com- pany is entitled to cross with a double-track crossing, at grade, the tracks of the South Chicago City Railway Company at or near the junction of Commercial avenue and South Chicago avenue, and also at Ninety-second street and Harbor avenue; and whereas, the party of the second part desires to construct a loop for the conveni- ence of operation of its road, from its tracks on South Chicago avenue along Ninety-first street and returning on Ninety-third street, and in order to construct said loop as an independent line it would be necessary to cross the tracks of the party of the first part lying on Commercial avenue, at Ninety-first street, and again at Ninety-third street; and whereas, both parties believe that crossings of electric railroad tracks at grade are dangerous to the public traveling on such roads, respectively, as well as inconvenient, expensive and dangerous to the companies operating them, and desiring to avoid any crossings of their roads at grade except those above mentioned, the party of the first part is willing to grant to the party of the second part a right of use, to be exercised jointly with the use by the party of the first part, in the ordinary course of its business, for the purpose of completing and operat- ing its said proposed said loop, the west track, lying on Commercial avenue, between Ninety-first street and South

Chicago avenue, upon the considerations, conditions and limitations in said contract stated, and the party of the second part is willing to receive such rights in place and stead of crossings of said tracks, as had been proposed:

"Now, therefore, this agreement witnesseth:   That upon the conditions and in consideration of the premises, etc., (here follows the grant to the appellee of the right to use appellant's west track, in common with appellant, on Commercial avenue, between Ninety-first street and South Chicago avenue, with conditions, items, etc., for a period of nineteen years, from the first of January, 1893); and said parties mutually agree to and with each other, and this contract is made upon the express condition, that with the exception of the crossings mentioned in the recitation of the contract, namely, at the junction of Commercial and South Chicago avenues and at the junction of Ninety-second street and Harbor avenue, no other crossings of one of the said railroad companies' road over the other, or over their joint tracks, shall ever be made, constructed or operated at grade, under any existing ordinance or which may hereafter be granted, without the written consent thereto of the parties to this contract, their successors or assigns."

The bill shows that appellee, after the making of the contract, obtained a license of the city of Chicago to build the necessary connection on Ninety-first street, and thereafter completed the loop, and continued its operation until December 22, 1895; that on November 11, 1895, the city of Chicago, by ordinance, granted the right to appellee, upon complying with certain conditions, to extend its lines over certain streets, and to cross at grade the tracks of appellant previously constructed, in twelve different and distinct places; that on November 22, 1895, appellee abandoned the connection with appellant's track at the intersection of Ninety-first street and Commercial avenue, and pursuant to the ordinance of November 11, 1895, but contrary to the terms of the contract and under

the protest of appellant, constructed a crossing at grade over the tracks of appellant at the intersection of Ninety-first street and Commercial avenue, and on December 26, 1895, in a similar manner constructed a crossing at grade over appellant's tracks at the intersection of Ninety-second and Erie avenue; that by means of these crossings and connecting lines appellee constructed a new loop, extending from its main track, at the intersection of South Chicago avenue and Ninety-first street, to Erie avenue, south on Erie avenue to Ninety-third street, and west on Ninety-third street to its main track at about the intersection of South Chicago avenue and Commercial avenue, and ever since has continued to use this loop; that at various other times and places, in a similar manner, pursuant to the ordinance, appellee has constructed other crossings at grade with appellant's track.

The prayer is that the contract between the parties of December 1, 1892, be adjudged and decreed in full force and effect, and that the defendant be enjoined from operating its motors and cars over and upon each crossing of the tracks of the complainant described in the bill, except those at the intersections of South Chicago avenue and Commercial avenue and that on Harbor avenue opposite Ninety-second street, and from constructing or putting in any further or other crossings over the tracks as they now exist or may hereafter be constructed by the complainant, without its consent in writing.

Charles M. Osborn, and Samuel A. Lynde, for appellant.

Judson F. Going, (Mann, Hayes & Miller, of counsel,) for appellee.

Mr. Justice Wilkin delivered the opinion of the court:

This is, in effect, an attempt to specifically enforce a contract by injunction. It is said in Pomeroy's Equity Jurisprudence (sec. 1341): "An injunction restraining the

breach of a contract is a negative specific enforcement of that contract. The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction to compel a specific performance. Both are governed by the same doctrine and rules. It may be stated as a general proposition, that whenever the contract is one of a class which will be affirmatively specifically enforced, a court of equity will restrain its breach by injunction, if this is the only practical mode of enforcement which its terms permit." Unless, therefore, the contract upon which the relief here sought is based is one which a court of equity would, if called upon to do so, specifically enforce between the parties, the demurrer was properly sustained by the circuit court.

It has been often said by this and other courts that courts of chancery will exercise a sound legal discretion, in view of all the terms and conditions of a contract, as well as the surrounding facts and circumstances, in determining whether it will specifically enforce such contract or not. We regard it as perfectly clear that no such rights are shown by the complainant, by its bill in this case, as entitle it to invoke the aid of a court of chancery to enforce the contract between it and the defendant, for the reason that, as appears upon its face, the contract is illegal and void, as against public policy.

Counsel for appellant, in their argument, attempt to separate that part of the contract which relates to the crossings at Ninety-first and Ninety-second streets from that part which pertains to making future grade crossings, and insist that the first is not only not against public policy but clearly in the public interest, and to that extent, at least, should be enforced; and that as to the latter part, it was not so far against public policy as to render it void,—the position, as we understand it, being, that even though the latter part of the agreement should be held void, still the former should be sustained. We do not think that contention could be maintained as to the

crossings at Ninety-first and Ninety-second streets, even
if the contract should be held divisible. We are, how-
ever, unable to see upon what principle this agreement
between the parties can be held valid in part unless it is
valid as a whole. (*Henderson* v. *Palmer*, 71 Ill. 579.) Nor
do we understand that the bill proceeds upon any such
theory. The contract is an entirety, that part of it re-
lating to future crossings being in consideration of the
contract for grade crossings at the places named. It will
be sufficient, therefore, to determine whether or not the
contract, as a whole, is one which a court of equity can
be called upon to enforce.

It sufficiently appears from the bill that these corpo-
rations were, at the time the contract was entered into,
rivals for public patronage in that part of the city in
which their lines were located. Under their organization
they owed the duty to the public to use their respective
franchises unrestrained by contract, and any agreement
between themselves, or with others, which tended to
prevent the discharge of that duty, is violative of the
public right, and void. The duty which they owed to the
public could not be "avoided by neglect, refusal, or by
agreement with other persons or corporations." (*Peoria
and Rock Island Railway Co.* v. *Coal Valley Mining Co.* 68 Ill.
489.) It is not denied that the municipality has the ex-
clusive right, in the control of its streets, to determine
upon what grade the street car lines should cross each
other. These companies, when they entered into the
contract in question, knew that the city of Chicago would
not, generally, at least, permit street railway tracks to
cross each other except at grade, and hence the agree-
ment can reasonably be considered as no more nor less
than a contract that they would not cross each other's
tracks at all, and that is, in effect, an agreement that
neither company shall invade the territory occupied by
the other, even though both the interest of the corpora-
tion and the public convenience might require it to be

done. Whatever tends to prevent competition among such companies and create a monopoly in their hands is against public policy. *Chicago Gas Light and Coke Co.* v. *People's Gas Light and Coke Co.* 121 Ill. 530; *People ex rel.* v. *Chicago Gas Trust Co.* 130 id. 268.

In *Bestor* v. *Wathen,* 60 Ill. 138, the action being by bill in equity to enforce a contract to lay off a town upon certain land, it was said (p. 140): "When the people, through the legislature, grant to a company the right of eminent domain for the purpose of constructing a railway, the grant is made because it is supposed the road will bring certain benefits to the public. When the company is incorporated and subscriptions are made to the stock, the money is subscribed upon the understanding that the officers entrusted with the construction of the road will so locate its line and establish its depots as to bring the highest pecuniary profit to the stockholders compatible with a proper regard to the public convenience. These, and these alone, are the considerations which should control the action of the president and directors of the road, and so far as they permit their official action to be swayed by their private interests they are guilty of a breach of trust towards the stockholders *and of a breach of duty to the public at large."* It was also held in *Marsh* v. *Fairbury, Pontiac and Northwestern Railway Co.* 64 Ill. 414, that equity would not enforce the specific performance of a contract on the part of a railroad company to locate a depot at a particular point, and at no other, in a town, the enforcement of such a contract being regarded as against public policy; and it was again said: "The specific execution of a contract in equity is a matter not of absolute right in the party, but of sound discretion in the court; and in deciding whether specific performance should be enforced against a railway company the court must have regard to the interests of the public,"—citing *Raphael* v. *Railway Co.* L. R. 2 Eq. Cas. 37. To the same effect is *St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mathers,* 71 Ill. 592.

It seems to be thought by counsel for appellant that as the defendant company was, at the time of entering into the agreement, under no duty to extend its lines across appellant's track, and could not be compelled thereafter to do so, therefore the contract was not illegal. This position we regard as wholly untenable. The interest of these companies and the interest of the public to have the street car lines extended as the demand therefor should arise are the same. One or both of the companies would, in its own interest, furnish such additional facility for travel as the public necessity required,—just as the defendant has done, as shown by this bill. Any contract which tended to deprive the public of that benefit is clearly violative of the public right, against public policy, and void. The principle is, that such corporations shall not bind themselves by contract not to serve the public interest as the demand arises. To say the defendant was not bound to extend its lines though it might be necessary to do so to serve the public convenience is one thing, but to say that it shall not do so because of the binding force of its contract with an individual or corporation is quite another and very different thing. *Doane* v. *Chicago City Railway Co.* 160 Ill. 22, sustains the principle here announced. It may be said that neither of these street car companies was at the time legally bound to extend its tracks, and on the theory here contended for the public would, during the entire period of the existence of the contract, be deprived of necessary facilities for street car travel, however great might be that necessity and however much the company might desire or be inclined to furnish that facility.

The bill stated no ground for equitable relief and was properly dismissed. The judgment of the Appellate Court will accordingly be affirmed.      *Judgment affirmed.*