McKinley Telephone Company, Respondent, vs. Cumberland Telephone Company, Appellant.

*January 28—February 18, 1913.*

*Public utilities: Telephone companies: Contracts: Validity: Sale of lines: Restricting fields of operation: Preventing competition: Public policy: Specific performance.*

1. A contract between the plaintiff and defendant telephone companies, each owning rural telephone lines radiating from a city, for the sale to plaintiff of such of defendant's lines as were parallel to plaintiff's, with option to purchase defendant's other rural lines, and providing against future duplication of lines, for restriction of their respective fields of operation— plaintiff to the rural lines and defendant to the city,—and for the furnishing by each of free connections to the patrons of the other, and containing other provisions calculated to increase the extent and efficiency and reduce the cost of telephone service in the territory covered, is not contrary to but in harmony with the public policy of this state evinced by the Public Utilities Act; and, in view of the powers of regulation and of fixing rates given by that act to the railroad commission, such a contract is not one "intended to restrain or prevent competition," etc., within the meaning of sec. 1791*j*, Stats.

2. Specific performance of such a contract may properly be enforced, the remedy at law for a refusal by defendant to transfer its rural lines and for repeated violations of the agreement being inadequate.

Appeal from an order of the circuit court for Barron county: Frank A. Ross, Circuit Judge. *Affirmed.*

This is an action for the specific performance of a contract for the sale of certain telephone lines and to enjoin the violation of the agreement.

The complaint alleges facts as follows: The plaintiff is a telephone corporation operating several rural telephone lines radiating from the city of Cumberland. The defendant is also a telephone corporation operating several rural telephone lines radiating from the city of Cumberland, and in addition thereto is furnishing telephone service in the city of Cumberland. Prior to May 6, 1909, some of the rural lines of the parties were parallel and served the same territory, and the

plaintiff was contemplating the installation of an exchange to furnish telephone service in the city of Cumberland in competition with the defendant. To comply with the wishes of the merchants and business men of the city of Cumberland who desired to secure telephone connection with all the patrons of both companies by a single telephone in each business place, and who were willing to secure a reduction in the cost of telephone service to them by an increased rate for the single telephone, which, however, would be less than the combined rates for telephones from both companies, this contract was executed between the plaintiff and the defendant.

The contract, executed May 6, 1909, provided that the contract should take effect after the state railroad commission had consented to the proposed raising of the rates. Upon this consent being given, the plaintiff was deemed to have purchased from the defendant those rural telephone lines belonging to the defendant which were parallel to lines of the plaintiff, and was to have an option to purchase the other rural lines. The plaintiff was to refrain from furnishing telephone service in the city of Cumberland to the residents of Cumberland, except as to one telephone already installed, and each party, for a period of seven years, was to furnish free connection to the patrons of the other. Defendant was to erect no new rural lines and was not to increase beyond twenty-five the number of telephones on any of the existing rural lines retained by it.

The complaint also alleges that the conditions of the contract have been complied with by the plaintiff. It is alleged that, contrary to the provisions of the contract, the defendant has extended its lines outside the city, has added new wires to its rural lines in violation of the conditions of the contract, and that it refuses to comply with the option given by it to the plaintiff for the purchase of the defendant's remaining rural lines. The plaintiff asks for specific performance of the option provisions of the contract and for injunction against violation of the contract in other respects.

This is an appeal from the order of the trial court overruling a demurrer to the complaint.

*W. N. Fuller,* for the appellant.

For the respondent there was a brief by *R. B. Hart,* attorney, and *Spencer Haven,* of counsel, and oral argument by *Mr. Hart.*

SIEBECKER, J. The allegations of the complaint indicate that the plaintiff and the defendant made this contract with the object in view of so conducting their telephone businesses as to avoid duplication of lines for the same territory, to restrict their respective fields of operation, to increase the extent and efficiency of the service, and to avoid the increase of rates due to a duplication of the plants in the same territory. It also appears that in making this arrangement the parties did not thereby gain such control of the public service as to enable them to impose exorbitant charges for the service on their patrons. The contract provides for a specific city rate to business men and merchants, if such rates should be approved by the state railroad commission as a reasonable one. Moreover, under the law the commission had power to reduce these rates if they should be found excessive. The facts stated also show that the plan of combination would probably enhance the efficiency of the service and that the patrons of each company would have the advantage of service connection with all the patrons of both lines, in place of service connection only with the patrons of one of the companies. It is therefore clear that so far as these public interests are concerned they are promoted by the contract and that there is no ground for objection to its enforcement in this regard.

It however is contended that the contract is void because it violates sec. 1791*j,* Stats., which provides:

"Any corporation organized under the laws of this state which shall enter into any combination, conspiracy, trust, pool, agreement or contract intended to restrain or prevent competition in the supply or price of any article or commodity in general use in this state, or constituting a subject of trade

or commerce therein, . . . shall, upon proof thereof, in any court of competent jurisdiction, have its charter or authority to do business in this state canceled and annulled."

It is obvious that the statute is directed against contracts which are violative of the public policy of the state respecting restraints of trade and competition in the supply of any commodity in general use constituting a subject of commerce. The furnishing of telephone service may be classed within the general terms of the statute as the supplying of a commodity constituting a subject of commerce. As heretofore indicated, the contract, in the light of the allegations of the complaint, does not operate to restrain the supply of this commodity to the public upon established telephone lines, nor does it tend to impose upon them arbitrary and oppressive burdens through the prevention of competition within the field of their operation.

It is argued that the contract prevents the defendant corporation from seeking new fields of operation for the conduct of its business and thus operates to restrain it from supplying telephone service to the public in such new territory. An application of the provisions of the contract to the facts and circumstances as alleged in the complaint clearly shows that the defendant is engaged in a local telephone business in the city of Cumberland and vicinity; that its long-distance service is connected with the Wisconsin Telephone Company; that under the contemplated arrangement it is empowered to furnish telephone service direct to the patrons it retains and to furnish exchange service to all its former patrons who have been transferred to the plaintiff, and also to those who might contemplate securing such service on any of the lines embraced in the contract; and that the defendant is not precluded from making telephone connections with telephone companies other than the plaintiff in territory not embraced within the field of plaintiff's actual service. The facts and

circumstances thus alleged, with all the reasonable implications, show that the objects of the contract are in harmony with the policy of the state, embodied in the legislative regulations of public utilities, namely, that the public welfare as regards these enterprises is best promoted through such means as afford the highest practical efficiency at the lowest cost, and that this may best be accomplished by uniting existing facilities, under proper control and regulation, to meet the public convenience and necessity, having regard for existing property interests and the rights and privileges appertaining thereto. *Calumet S. Co. v. Chilton,* 148 Wis. 334, 135 N. W. 131.

We are persuaded that the contract in question is not intended to restrain or prevent competition, nor does it so operate in conducting the defendant's telephone business, in the light of the provisions of this statute and the policy of the state respecting this subject of commerce.

It is contended that the contract deals with a transfer of personalty and with personal services, and hence is not specifically enforceable, and that plaintiff has an adequate remedy at law to compensate it for any breach thereof. The defendant has complied with many of the terms and conditions of the contract, but refuses to comply with the provision for the transfer to plaintiff of its rural lines upon the terms agreed on, and refuses to refrain from constructing new rural lines. It is manifest from the nature of these contentions that the plaintiff's remedy at law, by way of compensation for breach of these conditions, falls short of doing complete justice between the parties. To ask compensation for repeated and continuous refusals of the defendant to comply with the specified terms of the contract would also be impractical, in view of defendant's acceptance of the benefits of other terms of the contract. It is apparent that these different agreements constituted a mutual consideration the one for

the other. We are persuaded that the complaint states a good cause of action for specific performance.

*By the Court.*—The order appealed from is affirmed.

WINSLOW, C. J. (*concurring*). I agree with the result solely on the ground that the policy of this state as evidenced by the Public Utilities Act contemplates and provides for just such situations as will be produced by the contract here attacked, namely, situations where the public will be served by one public utility to the exclusion of competing companies of the same kind, and where the ordinary effects of such a monopoly, to wit, the raising of rates of service to excessive figures, will be prevented by the utilities commission. The idea of the law is that monopoly so regulated is preferable to ruinous competition ending in unregulated monopoly.

In my judgment the public utilities law changed the policy of the state with reference to competition between utilities of this kind, and modified sec. 1791*j*, Stats., so as to make agreements of this kind possible and legal, which before the passage of that act would have fallen within the inhibition of sec. 1791*j*.

Fearing that the opinion of the court may be understood as intimating that the agreement in the absence of the public utilities law could be upheld in the face of sec. 1791*j*, I wish to make my position clear.

BARNES, J. I concur in the above.

KERWIN J., and TIMLIN, J. The case of *Calumet S. Co. v. Chilton,* 148 Wis. 334, 135 N. W. 131, is cited in the opinion of the court, and fearing that this citation and our silence would be considered as an approval of some *dicta* in that case we append this note. The opinion therein by Justice MARSHALL filed March 4, 1912, is not the opinion of the court and reflects only the personal views of the learned jus-

tice who wrote it. It was not submitted to the court for approval.

We do not agree that there was in the particular mentioned in the opinion last referred to a mistake in *La Crosse v. La Crosse G. & E. Co.* 145 Wis. 408, 130 N. W. 530. We cannot assent to any suggestion that the reserved power of repeal found in sec. 1, art. XI, Const., is confined to the mere power to repeal the act creating a corporation, leaving the owners of the property formerly owned by the corporation free to reincorporate under the general incorporation laws and exercise and enjoy all other former corporate franchises as irrepealable grants. We are not sure that the opinion in question means this or will be so understood, but we desire to leave no doubt of our attitude on this question. The language of sec. 1, art. XI, is from one viewpoint narrow, because it was intended thereby merely to obviate the effect of the *Dartmouth College Case,* 4 Wheat. 518 (*Black River Imp. Co. v. Holway,* 87 Wis. 584, 59 N. W. 126), and it was then thought unnecessary to go further in order to vindicate the power of the state to control its corporations notwithstanding the clause in the federal constitution forbidding the passage by the state of laws impairing the obligation of contracts. In the *Water Power Cases,* 148 Wis. 124, 134 N. W. 330, this court held that an act of the legislature conferring upon a corporation the right and power to build and maintain a dam in a navigable stream, which grant the corporation accepted, was nevertheless repealable at the pleasure of the legislature, even where the corporation had expended large sums of money in complying with said grant. This grant included all the corporate powers and franchises of the corporation defendant except the mere right to exist as a corporation, and yet was repealable at the pleasure of the legislature, although of course subject to other provisions of the constitution in force and applicable notwithstanding this conceded right of repeal. The precedents cited in that opinion sup-

port this view, and, omitting mere *dictum* and argument and considering the points actually decided, the great weight of judicial authority is to this effect.

Further, with reference to the opinion of the court in *Calumet S. Co. v. Chilton, supra,* we desire at the earliest practicable moment to withdraw any acquiescence in the *dicta* found in that opinion to the effect that a municipality may not do its own lighting if there is present in that municipality an electric lighting company holding an indeterminate permit and standing ready to supply the city with such lighting at rates fixed by it or by the railroad rate commission. The contrary would be to hold that through the railroad rate commission the taxpayers of the municipality may be taxed for the purpose of paying dividends or aiding to pay dividends on the stock or interest on the bonds of an impecunious public service company.   We do not think the legislature could do this, nor could any commission deriving its power from the legislature.   This would be the result of a ruling which would forbid the city to do its own lighting and compel it to buy from the single public utility within its boundaries, at the same time permitting this utility itself, or the railroad rate commission, to fix rates adequate to give the private investors in the stock and bonds of such public utility a fair return upon their investment, if without such public lighting there would not be a fair return.   Patrons or consumers of electric light are free to contract or refuse to contract with such public utility, but in the case mentioned the taxpayer would have no such option.