THE UNION TRUST AND SAVINGS BANK OF EAST ST. LOUIS
*et al.* Appellees, *vs.* THE KINLOCH LONG DISTANCE
TELEPHONE COMPANY OF MISSOURI, Appellant.

*Opinion filed April 19, 1913.*

1. CORPORATIONS—*what combinations and contracts are unlaw-
ful.* Combinations and contracts of corporations and of individu-
als having for their object the restraint of trade, the destruction of
competition, the creation of a monopoly and the raising of prices
are unlawful, even though they violate no statute.

2. SAME—*rule that contracts in partial restraint of trade may
be valid does not apply to public service corporations.* The ordi-
nary rule that contracts in partial restraint of trade may be valid
under certain circumstances does not apply to contracts of corpo-
rations engaged in a service in which the public is interested, and
whatever tends to prevent competition between them or to create
a monopoly is unlawful.

3. SAME—*public service corporation cannot disable itself from
performing any of its duties.* A public service corporation, such
as a telephone company, owes a duty to the public, and it cannot,
without the consent of the State, disable itself from performing
any part of the functions which its charter authorizes it to per-
form, and a contract to do so is a violation of its duty to the State
and is void, as against public policy.

4. SAME—*local telephone company cannot bind itself to connect
with one long distance line, only.* A local telephone company can
not bind itself, by contract with a long distance telephone com-
pany, to give the long distance business of its patrons to such long
distance company, only; and it is no justification for such con-
tract that the local company is not under any express duty to give
its patrons long distance service, or that it cannot get connection
with any long distance company without making such a contract.

5. SAME—*whether public interest will be best served by com-
petitive or monopolistic service is a legislative question.* It is a
legislative question whether the public interest will be best pro-

moted by monopolistic rather than competitive service, but in the absence of legislative action a contract by which a local telephone company binds itself to give the long distance business of its patrons to one long distance company, only, is violative of public right and against the declared public policy of the State.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Fayette county; the Hon. THOMAS M. JETT, Judge, presiding.

REYNOLDS & HARLAN, and PATTON & PATTON, for appellant.

W. B. MANN, and D. K. TONE, (G. T. TURNER, W. A. LOUDAN, and BROWN & BURNSIDE, of counsel,) for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The Farmers' and Merchants' Bank of Vandalia, as the owner of certain bonds of the Vandalia Telephone Company, and the Union Trust and Savings Bank of East St. Louis, as the trustee in a trust deed securing such bonds, filed a bill to foreclose the trust deed, which was dated June 1, 1907, and conveyed the telephone exchange, switchboard, poles, wires, instruments, and all property of every description of the Vandalia Telephone Company. The Kinloch Long Distance Telephone Company of Missouri was made a defendant upon the allegation that it claimed some interest in the premises, and it answered setting up its interest. The cause was heard on the bill, the separate answers of the defendants, replication and evidence, and a decree of foreclosure was rendered finding that the Kinloch company had no lien on or interest in the property. The Appellate Court for the Fourth District affirmed the decree and granted a certificate of importance and appeal to the

Kinloch company, alone. No question is made as to the foreclosure but only as to the validity and effect of the contract hereafter mentioned between the long distance and the telephone companies, by which names the telephone companies designated themselves and will hereafter be called.

The telephone company is an Illinois corporation, authorized to construct, maintain and operate a telephone system and do a general telephone business, and in April, 1906, was constructing and intending to operate a telephone exchange in the city of Vandalia and lines reaching other places in Fayette county. The long distance company is a Missouri corporation, authorized by its charter to construct, own, operate and maintain local exchanges and long distance telephone lines throughout the States of Missouri and Illinois, and also authorized, by having complied with the laws of this State, to exercise here the rights and privileges granted to foreign corporations. These corporations, on April 27, 1906, entered into a contract whereby the long distance company granted to the telephone company a license to attach cross-arms to twelve poles of the long distance company in the city of Vandalia, and the telephone company granted a license to the long distance company to connect its telephone system with that of the telephone company through its switchboards, so that there could be an interchange of business at all times between the parties, the license thus granted to be irrevocable during the existence of the agreement, and the agreement to remain in force during the life of the telephone company's franchise to operate in the city of Vandalia and during any renewals or extensions thereof. Other material provisions of the contract are as follows:

"*Fourth*—No connection with any other line or lines, except those actually owned, controlled and operated by the telephone company, is contemplated or intended by the long distance company in this agreement, and no connection with any other line will be given, or allowed to be given, by the

telephone company to the long distance company's lines, under penalty of forfeiture of the rights herein contained, unless special agreement in writing is entered into between the parties hereto and the third parties who desire to connect to the long distance company's system through the telephone company's lines, in which agreement the telephone company becomes responsible to the long distance company for every message delivered to the long distance company's lines by the third parties, and makes said parties' lines in every other respect a part of its own system and bound by the terms and conditions of this agreement. Nothing in this section, however, shall be construed to prevent the long distance company from connecting with other companies and exchanges at points outside of said city of Vandalia.

"*Fifth*—The telephone company agrees to deliver to the long distance company all messages originating on its own line or exchange and which terminate at points reached by the long distance company or its connecting lines, and the long distance company agrees to deliver to the telephone company all messages it receives which terminate at points reached by the telephone company in the county of Fayette, aforesaid. If the lines of the telephone company reach points outside of said county of Fayette, which points are also reached by other 'independent' or 'opposition' lines, the long distance company hereby agrees to distribute the business destined for such common point as equally as practicable between the telephone company and such other 'independent' or 'opposition' line or lines, but the long distance company reserves the right to transmit all business to such common point over such line or lines as will enable it to render the best service.

"*Twelfth*—The telephone company shall not sell or lease any of its wires or exchanges to any telephone company, or to any corporation or individual whatsoever, so as to impair the provisions of this contract, without the consent of the long distance company; nor have the right to connect

or exchange business with any company at or for points reached by the long distance company or its connecting lines; nor have the right to do anything which will in any manner impair the obligations of this contract or impair the efficiency of the long distance business or its connection with the long distance company."

The answer of the long distance company, after setting up this contract, alleged that it was operating lines for long distance telephone service reaching numerous cities, towns and villages of the States of Illinois, Missouri, Kansas, Indiana, Ohio and Kentucky; that the service of the telephone company was limited to the city of Vandalia and the county of Fayette; that there was no competition between the two companies, but the contract was entered into to enable the telephone company to furnish to its subscribers and to the public long distance telephone service; that the parties to the contract assumed a greater public duty than either could have assumed without the aid of the other, and that they have operated in competition with the Bell telephone system and have furnished long distance telephone service at reasonable rates; that at the time the trust deed was executed the contract was in force, both parties were carrying it out and were mutually using the property of one another in doing so, the appellees had full knowledge of these facts, and for that reason the long distance company had an interest in the property which was not subject to the lien of the trust deed. Upon exception by the appellees all the allegations in the answer having any reference to the contract were stricken out as impertinent.

It is manifest from the terms of the contract that its object was to restrict long distance telephone service, so far as the city of Vandalia and Fayette county were concerned, to the Kinloch company. The patrons of the telephone company were deprived of the opportunity of communication with persons in distant cities except over the Kinloch lines though such persons had telephones connected with

another company's lines running to Vandalia, and the telephone company contracted not to give them this opportunity so long as it was engaged in the telephone business in Vandalia. · The contract was adapted to secure a monopoly of the business to the Kinloch company and was entered into for that purpose. By it the telephone company deprived itself of the power to render to the public a part of the service which it was organized to render. Combinations and contracts of corporations and of individuals having for their object the restraint of trade, the destruction of competition, the creation of a monopoly and the raising of prices are unlawful, even though they violate no statute. The contract is in restraint of trade and commerce, and is therefore void unless the circumstances of the particular case exempt it from the general rule.

The rule that at common law contracts in general restraint of trade are illegal and void is well settled, but agreements in partial restraint of trade, only, may be good under certain circumstances if reasonable in their nature and made upon a sufficient consideration. The cases in which such contracts in partial restraint of trade have been regarded as reasonable have usually been cases in which the vendor of property or business has been restricted in its use so as not to injure the vendee, or the vendee has been restricted so as not to injure the business of the vendor, or a partner or employee has been restrained from competition with the partnership or employer to the injury of the business. In all cases the restraint of trade has been auxiliary to the main purpose of the contract, and has been necessary to protect one party from injury by the unfair use of the subject matter of the contract by the other party. (*More* v. *Bennett*, 140 Ill. 69; *Oregon Steam Navigation Co.* v. *Winsor*, 20 Wall. 64.) The ordinary rule that contracts in partial restraint of trade are not invalid does not, however, apply to corporations engaged in a public business in which all the public are interested. Whatever tends to

prevent competition between them or to create a monopoly is unlawful. (*Chicago Gas Light Co.* v. *People's Gas Light Co.* 121 Ill. 530; *People* v. *Chicago Gas Trust Co.* 130 id. 268.) The business of such corporations is public in its nature, and is the exercise of a franchise granted by the State, not for the private benefit of the corporation, only, but for the benefit of the public as well. A corporation receiving such a grant owes a duty to the public, and it cannot, without the consent of the State, disable itself from performing any part of the functions which its charter authorizes it to perform. A contract to do so is a violation of its duty to the State and is void, as against public policy. *Chicago Gas Light Co.* v. *People's Gas Light Co. supra; People* v. *Chicago Gas Trust Co. supra; South Chicago City Railway Co.* v. *Calumet Street Railway Co.* 171 Ill. 391; *Thomas* v. *West Jersey Railroad Co.* 101 U. S. 71; *Gibbs* v. *Consolidated Gas Co.* 130 id. 306.

The duty of the corporations to use their franchises for the public interest cannot be restrained by contract, and it is no justification for an agreement which tends to prevent the discharge of that duty that the telephone company was not under an express duty to give long distance telephone service to the public. It was a public service corporation which had the power, by virtue of the franchise granted it by the State, to extend its lines when and where the interests of the public and its own interest demanded. It is argued that the effect of the contract was to create competition and not to destroy it. It is said that the Bell system had a local exchange at Vandalia, connecting with its long distance lines, when the Vandalia Telephone Company was organized, in 1906, and that the effect of the contract with the Kinloch company was to enable the telephone company to increase its service by giving long distance connections and to give the public at Vandalia two local and long distance telephone systems. It is not the effect of the contract that there are two long distance telephone lines in Vandalia.

Without the contract the telephone company would be at liberty to contract with both the Kinloch and Bell systems for long distance connections. Under such contracts the patrons of the telephone company could be connected directly with any telephone on either system, and the patrons of either system in distant cities could be connected directly with patrons of the telephone company. Such service, however desirable, is now impossible. It will continue to be impossible unless contracts can be made with both long distance companies. These contracts cannot be compelled, but none of the corporations can by any contract deprive themselves of the power to make them. It may be that the telephone company cannot be compelled to give long distance service or to connect its exchange with any other system, or, having connected with one system, to permit a connection with another. It may decline to undertake any service which cannot be begun and completed over its own lines. If it does undertake such service it may select its own lines and it may confine itself to one agent, but it may not bind itself to do so and contract away its right and power to use more than one agency, and thus limit its power to serve the public to that part of the public reached by the one agency. The object of telephone systems is to enable individuals to talk to one another at distances too great for ordinary conversation. A line connecting two cities with a single instrument at each end would be of comparatively little use. It is the possibility of connection with a large number of instruments that gives usefulness to the system. The use of the telephone has come to be quite generally regarded not as a luxury or convenience but a necessity, and it is essential to the greatest public convenience that all users of telephones should be able to secure, as nearly as possible, direct connection with all other users. This perfection of service is not now possible, but a telephone company is avoiding the performance of its duty to the public when it contracts to restrict its field of operations to communications to and

258 — 14

from the patrons of one long distance line. Any contract thus to deprive itself of the power to render to the public that service which it was incorporated to give is violative of the public right. The language used in *South Chicago City Railway Co. v. Calumet Street Railway Co. supra,* is applicable here: "To say the defendant was not bound to extend its lines though it might be necessary to do so to serve the public convenience is one thing; but to say that it shall not do so because of the binding force of its contract with an individual or corporation is quite another and very different thing."

If neither of the long distance companies at Vandalia would contract with the telephone company for long distance service without an exclusive clause in the contract, the latter had still the right to construct its own long distance lines and the long distance companies the right to establish local exchanges. A general interchange of business among all the companies would be more beneficial to the public. While this cannot be compelled, it cannot be said that competition would be increased by the combination of two of the systems through an exclusive contract for the interchange of business. While no statute has been enacted declaring such exclusive contracts criminal or giving a right of action to persons prejudiced by them, the courts have declared the public policy of the State, in accordance with the common law, to be opposed to such contracts which tend to put the power to render public service in the hands of one corporation and to take it away from all others. The legislature has the power to change this policy. It is a legislative question whether the public interest will be promoted by monopolistic rather than competitive service. In the absence of legislative action the contract in controversy must be held to be illegal and void.

The Supreme Court of Missouri has held a contract for the exclusive interchange of business very similar to the one now under consideration to be for the purpose of com-

petition and not of monopoly. (*Home Telephone Co.* v. *Sarcoxie Light and Telephone Co.* 236 Mo. 114.) It was so held in *Cumberland Telephone and Telegraph Co.* v. *State,* 100 Miss. 102. The opposite view is sustained by the case of *United States Telephone Co.* v. *Central Union Telephone Co.* 171 Fed. Rep. 130; same case on appeal, 202 id. 66; and to some extent by *State* v. *Cadwallader,* 172 Ind. 619, and *Central New York Telephone and Telegraph Co.* v. *Averill,* 199 N. Y. 128. Such contracts can be regarded as favoring competition only on the theory that they are necessary to enable a weaker competitor to contend against one stronger and already established. This might be the effect for a time, but when by exclusive contracts control of territory had been secured, then by new contracts and combinations all competition could be eliminated and the last state of that community would be worse than the first. It is not an answer to say that the effect of the contract has not been to destroy competition; that competition still exists and that the service is rendered at reasonable prices. The material consideration is, not that the effect of the contract has been to raise prices, but that the power exists to do so; not the degree of injury inflicted on the public, but the tendency to inflict injury. *Harding* v. *American Glucose Co.* 182 Ill. 551; *Salt Co.* v. *Guthrie,* 35 Ohio St. 666; *State* v. *Standard Oil Co.* 49 id. 137; *State* v. *Portland Natural Gas Co.* 153 Ind. 483.

Cases have been cited involving the contracts of railroad companies for the exclusive use of sleeping cars, express cars, wharves and docks. The character of such contracts is essentially different from that involved here. The nature of the use to be made of the property, the character of the service to be rendered, the agents to be employed and the agencies to be maintained, were such as would interfere materially with the railroad company's control of its own business if the business provided for in such contracts were to be free to all applicants. The same difficulty does not

exist in regard to the telephone service, in which it is entirely practicable to take on long distance connections with many companies, and the cases cited have therefore little analogy here.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*