**MONTANA–DAKOTA UTILITIES CO.,**
Appellant,

v.

**WILLIAMS ELECTRIC COOPERATIVE,**
Inc., Appellee.
No. 16014.

United States Court of Appeals
Eighth Circuit.
Feb. 10, 1959.

William R. Pearce, Bismarck, N. D. (Armin M. Johnson, Minneapolis, Minn., Cox, Pearce & Engebretson, Bismarck, N. D., and Faegre & Benson, Minneapolis, Minn., were with him on the brief), for appellant.

Frank F. Jestrab, Williston, N. D. (Harry M. Pippin and Bjella, Jestrab & Neff, Williston, N. D., were with him on the brief), for appellee.

Before JOHNSEN, VOGEL and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

This is an action for damages for alleged breach of a contract in which Williams Electric Cooperative, Inc., a North Dakota corporation, plaintiff below, recovered a jury verdict and judgment for

$35,000 against Montana-Dakota Utilities Co., a Delaware corporation. Failing in its effort to obtain favorable action on its after trial motion for judgment, the defendant has brought the case to this court.

On July 21, 1952, plaintiff and defendant entered into the contract, here in question, in which it was recited that the Cooperative (plaintiff) and the Company (defendant) have electric facilities available for the distribution of electricity in the Williston, North Dakota, community, and with expansion and growth in that community taking place, a dispute has arisen between the parties concerning the right to serve customers in that area. In order to settle differences between the parties amicably, they agreed, inter alia:

"1. That the map attached hereto marked Exhibit 'A' and made a part hereof is a true representation of the Williston community and surrounding area experiencing growth and development wherein the dispute exists between the parties as to the right to serve new customers with electricity and there is indicated thereon by a heavy red line the boundary to be observed by the parties, the Cooperative to render electric service to new customers situated to the west, north and east of said red line and the Company to render electric service to new customers within the boundaries of said line."

"4. Neither party will solicit the customers of the other party for electric service."

After the contract was entered into, events occurred which form the basis for this litigation, in that defendant, upon formal consumer request to do so, extended its facilities whereby it was enabled to and did furnish service to three electric consumers that were located in the area designated by the contract as plaintiff's territory. This provoked a dispute between the two companies and ultimately resulted in plaintiff's filing a complaint before the Public Service Commission of North Dakota in which that agency was requested to issue an order restraining defendant from serving present and prospective customers in the prohibited area. In support of its complaint before the Commission, plaintiff relied, first, on the contract here in question, and second, on the charge that defendant was acting within the disputed area without authority of a certificate of public convenience and necessity, contrary to § 49–0301 N.D.R.C., 1943, 1953 Supp. The Commission dismissed the complaint and this action was subsequently affirmed in all respects by the Supreme Court of North Dakota, which ruled that the extensions of service by defendant, although made without a certificate of public necessity, were lawful within the exceptions of Paragraph 3 of § 49–0301, supra, which allowed extensions without certificates " * * * into territory contiguous to that already occupied by it and not receiving similar service from another utility, or electric cooperative * * * or if no certificate of public convenience and necessity has been issued to any other public utility."[1] Williams Electric Co-op., Inc., v. Montana-Dakota Utilities Co., N. D., 79 N.W. 2d 508. The court further held that the Commission properly declined to determine the contractual rights of the parties, this being a judicial function for the courts, stating at page 517: "If any contractual rights exist between the appellant and the respondent under the agreement dated July 21, 1952, *which we*

[1]. Apparently, under Rule 23, Standards of Electric Service, promulgated by the North Dakota Public Service Commission, the defendant could have been *compelled* to furnish service to outlying areas, upon proper consumer application. This rule provides: "A utility will be required to make extensions * * * where the estimated net income will yield a net return of approximately six per cent (6%) on the investment to be made." The manager of the Cooperative conceded in his testimony that the return on investments made in the disputed area "would be well over 6 per cent."

*do not determine,* the enforcement of such rights must be sought in the courts of this state." (Emphasis supplied.)

Being unsuccessful in its effort to force defendant to discontinue furnishing electric service in its claimed territory, plaintiff instituted this action for damages, thus bringing the question of the validity of the contract squarely into issue.

Defendant contends that since the contract in question has for its principal object the dividing of trade territory between parties affected with a public interest, it is contrary to public policy and is therefore void and unenforceable. This position is sound and must be sustained.[2]

■ In general, a contract which unreasonably restrains trade is contrary to public policy and void. This is such an elementary and universally recognized rule of law that citation of authorities should not be necessary. For discussion and survey of the principle both at common law and under more modern statutes, see United States v. Addyston Pipe & Steel Co., 6 Cir., 85 F. 271, modified 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136, and consult Corbin on Contracts, Vol. 6, Chap. 80; Vol. II, Restatement of the Law of Contracts, §§ 513–517; Williston on Contracts, Rev.Ed., Vol. 5, § 1633 et seq.; 17 C.J.S. Contracts § 238. North Dakota, like many states, has outlawed such contracts by statute. Section 9–0806, N.D.R.C. 1943, provides:

> "Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind is to that extent void, except * * * (Two exceptions not here present are set out)."

See also § 51–0801 et seq. N.D.R.C. 1943, relating to Pools and Trusts.

Plaintiff does not dispute the foregoing principle, but takes the position that under the "rule of reason," the contract does not constitute an unreasonable restraint on trade. As a corollary proposition, plaintiff suggests that the public policy of North Dakota, as exemplified by the enactment of Chapter 235, S.L. N.D.1927, now § 49–0301 N.D.R.C.1943, 1953 Supp., supra, "is unalterably opposed to unrestricted competition between corporations engaged in the transmission and distribution of electrical power and, on the contrary, supports firmly any method of eliminating competition without detriment to the consuming public." We agree that, with the exception of certain "illegal per se" situations,[3] resort must be had to the "rule of reason" in determining liability under the Sherman Act, 15 U.S.C.A. § 1 et seq., and analogous statutes. As this court said in Adams Dairy Company v. St. Louis Dairy Company, 8 Cir., 260 F.2d 46, at page 53: "(T)he principle is firmly entrenched that in determining whether a restraint is unreasonable and therefore illegal and violative of the Sherman Act, resort must be had to the Rule of Reason." The rule has been adhered to since its promulgation by the Supreme Court in 1911 in Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, and was applied by the Supreme Court of Minnesota to a state statute modeled after the Sherman Act in Pittsburgh Plate Glass Co. v. Paine & Nixon Co., 182 Minn. 159, 234 N.W. 453, where a manufacturer had agreed not to solicit work in a particular locality.

However, of paramount importance to our case is a consideration of the nature of the business of the contracting parties.

2. The trial judge instructed the jury that the contract was valid and binding, and that service in the disputed area was not required of defendant by statute or rule.

3. E. g., Price fixing, United States v. Trenton Potteries Co., 273 U.S. 392, 397, 47 S.Ct. 377, 379, 71 L.Ed. 700; division of territory among producers; United

States v. Addyston Pipe & Steel Co., 6 Cir., 85 F. 271, modified 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136. For discussion, see Northern Pac. Ry. Co. v. United States, 356 U.S. 1, 5, 78 S.Ct. 514, 2 L. Ed. 545 (tying agreements), and United States v. Aluminum Co. of America, 2 Cir., 148 F.2d 416, 427–428 (contracts creating monopolies which thereby indirectly fixed prices).

One is a public utility, the other, an electrical cooperative corporation—quasi public in character—both engaged in supplying a commodity to the public in the territory they are authorized to serve. In determining the relative freedom to contract and the validity of contracts which tend to restrict trade, the courts have definitely distinguished the limited powers of corporations impressed with a public trust and duty, from the greater freedom allowed to private enterprise. By the great weight of authority in this country, the rule has been promulgated and consistently applied that contracts between quasi-public corporations, having for their object the division of territory between such companies, are against public policy, and being so, are absolutely void, untempered by any application of the "rule of reason." A concise summation of the pronouncements made on this precise question is the following in 36 Am.Jur., Monopolies, Combinations, etc., § 97:

> "Many cases hold that all contracts, combinations, and agreements between competing carriers and other *public utilities* for the elimination of competition, fixing of rates, *division of territory,* or pooling of profits, are illegal and void as tending toward monopoly or the restraint of trade and competition *to the public detriment;* and this is held to be true regardless of the fact that the restraint is partial *and without regard to whether or not actual injury has resulted to the public."* (Emphasis supplied.)

Typical of such holdings is Chicago Gas-Light & Coke Co. v. People's Gas-Light & Coke Co., 121 Ill. 530, 13 N.E. 169, where the contract purported to divide the city of Chicago between two gas companies, each having charters to serve all of the city, and actually undertaking so to serve, prior to the contract under which one covenanted not to serve a particular section of the city. In a thorough and well-reasoned opinion, the court refused specific performance, stating at page 175 of 13 N.E.

> "The ordinary rule, that contracts in partial restraint of trade are not invalid, does not apply to corporations like appellant and appellee, because they were engaged in a public business, and in furnishing that which was a matter of public concern to all the inhabitants of the city."

In Gibbs v. Baltimore Gas Co., 130 U.S. 396, 399, 9 S.Ct. 553, 554, 32 L.Ed. 979, the Supreme Court was concerned with a contract between two gas companies, which contained, among others, the following provision:

> "5. Neither party hereto shall solicit any business belonging to the other, but either party may take such consumers of the other as may voluntarily, without any solicitation, desire to change from one to the other."

While the contract also attempted to fix prices, which is not a subject of the contract under consideration here, the court was careful to point out, 130 U.S. at page 406, 9 S.Ct. at page 556, that the contract provided: "that one of the companies should lay no more pipes or mains for the supply of gas in the city; * * * (i)t will be perceived that this was an agreement for the abandonment by one of the companies of the discharge of its duties to the public, * * *." Getting down to the law, the Court stated at pages 409–410, of 130 U.S. at page 557, of 9 S.Ct.

> "There are two principal grounds on which the doctrine is founded that a contract in restraint of trade is void as against public policy. One is, the injury to the public by being deprived of the restricted party's industry; the other is, the injury to the party himself by being precluded from pursuing his occupation, and thus being prevented from supporting himself and his family. * * * Innumerable cases, however, might be cited to sustain the proposition that combinations among those engaged in business impressed with a public or *quasi*

public character, which are manifestly prejudicial to the public interest, cannot be upheld. * * * *It is also too well settled to admit of doubt that a corporation cannot disable itself by contract from performing the public duties which it has undertaken*, and by agreement compel itself to make public accommodation or convenience subservient to its private interests." (Emphasis supplied.)

Of more recent vintage is Pennsylvania Water & Power Co. v. Consolidated Gas, Elec. Light & Power Co., 4 Cir., 1950, 184 F.2d 552, certiorari denied 340 U.S. 906, 71 S.Ct. 282, 95 L.Ed. 655, where a contract between two utilities fixing prices and dividing territory was held to violate the Sherman Act, despite the fact that the public might actually benefit. Pertinent to the instant question, the Court stated 184 F.2d at page 558: "Similarly illegal is any agreement for the division of territory between competitors which in this case was effectuated by permitting Consolidated to determine to what customers and in what territory Penn Water might sell. U. S. v. Aluminum Co., 2 Cir., 148 F.2d 416; U. S. v. Addyston Pipe & Steel Co., 6 Cir., 85 F. 271, 291, 46 L.R.A. 122." See also and compare, South Chicago City Ry. Co. v. Calumet Electric St. Ry. Co., 171 Ill. 391, 49 N.E. 576; Huntington Telephone Co. v. Public Utilities Commission, 118 Conn. 71, 170 A. 679; Union Trust & Savings Bank of East St. Louis v. Kinloch Long-Distance Tel. Co., 258 Ill. 202, 101 N.E. 535, 45 L.R.A.,N.S., 465; Custer Public Power District v. Loup River Public Power District, 162 Neb. 300, 75 N.W.2d 619, 162 Neb. 821, 77 N.W.2d 590; Wattsburg Telephone Cooperative Ass'n v. Pennsylvania Public Utility Com'n, 182 Pa.Super. 594, 128 A.2d 160; Doane v. Chicago City Ry. Co., 160 Ill. 22, 45 N.E. 507, 35 L.R.A. 588; Taylor v. Santa Fe Northwestern R. Co., 38 N.M. 457, 34 P.2d 1102; Portland Natural Gas & Oil Co. v. State ex rel. Keen, 135 Ind. 54, 34 N.E. 818, 21 L.R.A. 639; Sammons v. Kearney Power & Irrigation Co., 77

Neb. 580, 600, 110 N.W. 308, 8 L.R.A., N.S., 404; Central Transp. Co. v. Pullman's Palace-Car Co., 139 U.S. 24, 11 S.Ct. 478, 35 L.Ed. 55; Annotation 58 A.L.R. 804.

■ We recognize the general rule that public utilities have the right to enter into contracts between themselves free from control or supervision of the State—see 73 C.J.S. Public Utilities § 5, and compare Georgia Power Co. v. Georgia Pub. Serv. Com'n, 211 Ga. 223, 85 S.E.2d 14—and we have considered the decisions cited by plaintiff upholding contracts between utilities which did restrain trade, either because there was no showing of detriment to the public, or because affirmative benefit to the public resulted therefrom. McKinley Telephone Co. v. Cumberland Telephone Co., 152 Wis. 359, 140 N.W. 38; Weld v. Board of Gas & Electric Light Com'rs, 197 Mass. 556, 84 N.E. 101; San Diego Water Co. v. San Diego Flume Co., 108 Cal. 549, 41 P. 495, 29 L.R.A. 839. Although these few cases do to some extent support plaintiff's contention, they are definitely minority holdings. The decision in Pittsburgh Plate Glass Co. v. Paine & Nixon Co., 182 Minn. 159, 234 N.W. 453, supra, also cited by plaintiff, may be readily distinguished because there, private companies were involved.

■ From the overwhelming majority of cases, it is quite clear that parties engaged in performing a duty or rendering service which is public in nature, such as the companies here involved, cannot disable themselves by contract from performing the public duties which they have undertaken. Further, it is not necessary to establish that the contract has proved detrimental to the public. Williston states, after pointing out that in England contracts of such nature have been upheld—"In the United States, however, such agreements have been held illegal whether they were proved in fact to be detrimental to the public or not." § 1648, Vol. 5, Rev.Ed. See Custer Public Power District v. Loup River Public Power District, 162 Neb. 300, 75 N.W.2d 619, 628; Pennsylvania Water & Power

Co. v. Consolidated Gas, Elec. Light & Power Co., 4 Cir., 184 F.2d 552, 559, certiorari denied 340 U.S. 906, 71 S.Ct. 282, 95 L.Ed. 655; 36 Am.Jur., Monopolies, Combinations, etc. § 97, quoted supra. As to illegality of contracting away public duties which might arise in the future, see South Chicago City Ry. Co. v. Calumet Electric St. Ry. Co., 171 Ill. 391, 49 N.E. 576, 578:

> "The interest of these companies, and the interest of the public, to have the street-car lines extended as the demand therefor should arise, are the same. * * * Any contract which tended to deprive the public of that benefit is clearly violative of the public right, against public policy, and void. The principle is that such corporations shall not bind themselves by contract not to serve the public interest as the demand arises. To say the defendant was not bound to extend its lines, though it might be necessary to do so to serve the public convenience, is one thing; but to say that it shall not do so, because of the binding force of its contract with an individual or corporation, is quite another, and very different, thing."

Compare Doane v. Chicago City Ry. Co., 160 Ill. 22, 45 N.E. 507; Custer Public Power District v. Loup River Public Power District, 162 Neb. 300, 75 N.W.2d 619, 162 Neb. 821, 77 N.W.2d 590 (Increased power needs called for erection of new plant); Union Trust & Savings Bank v. Kinloch Long-Distance Tel. Co., 258 Ill. 202, 101 N.E. 535 (although utility not bound to furnish long distance service, once it is undertaken, the assumed duty cannot be fettered by exclusive dealing contract).

■ In the case before us, and apart from any affirmative duty imposed by Rule 23 of the North Dakota Public Service Commission,[4] it was conclusively

determined by the Supreme Court of North Dakota in Williams Electric Co-op., Inc. v. Montana-Dakota Utilities Co., N.D., 79 N.W.2d 508, supra, that defendant's extensions here complained of were lawful and within the contemplation of § 49–0301 N.D.R.C., 1943, 1953 Supp., supra. As seen before, one of the complaints made by plaintiff in the proceeding inaugurated by it before the Public Service Commission was that defendant's extensions into the disputed territory were unlawful and in violation of the foregoing statute. In a careful analysis of the statute, and in view of the factual situation existing, this contention was disallowed. Thus, although apparently the territory was not included within defendant's existing certificate of public convenience and necessity, nevertheless, because of the circumstances which brought defendant within Paragraph 3 of § 49–0301, supra, it had the legal right to serve the disputed area. That being the situation, we cannot escape the conclusion that the parties could not impair or restrict by contract the right, power, and correlative duty of defendant to serve all within that area desiring service.

Examination of the contract discloses that its sole and only purpose and function was to divide and set apart the territory each was to serve, with the further agreement that neither would solicit the customers of the other party for electric service. It of course follows that if legal sanction is given to such an agreement, consumers of electricity in the area, which the competing companies have divided, without pretense of authority from the proper regulatory body,[5] would be completely and effectively deprived of the right to electric service from the utility which was legally empowered to render such service. In our view, such a contract adversely affects the public interest, and apart from the

4. See discussion, footnote 1, supra.

5. Compare Ohio-Midland Light & Power Co. v. Columbus & Southern Ohio Elec. Co., Ohio Com.Pl.1954, 123 N.E.2d 675; Petition of Grand River Dam Authority, Okl., 1957, 320 P.2d 706.

fact that such contracts are denied specific enforcement, we further determine that, being void, this contract cannot support an action and judgment for damages.

The judgment is reversed.